21 313
112 181

---

BEATIE & OTHERS, Appellants, *vs.* BUTLER & FOWLER, Respondents.

1. The death of the mortgagor does not extinguish or suspend a power of sale in a mortgage.
2. An innocent purchaser at a sale under a power in a recorded mortgage is not affected by an unrecorded agreement executed by the mortgagee at the date of the mortgage that the time of payment of the mortgage debt should be extended upon payment of interest.
3. Possession by the mortgagor's tenant is not notice to the purchaser of the unrecorded agreement.

4. As to the effect of possession as notice of an equity or unrecorded title under our statute of conveyances.

5. Notice that a sale was to take place " *at the town of St. Joseph,*" held sufficient notice of the place of sale under the circumstances.

### *Appeal from Buchanan Circuit Court.*

This was a petition to set aside a sale made under a mortgage, by the mortgagee. The plaintiffs were the heirs at law and widow of Josiah N. Beatie, deceased, and the defendants were Martin Butler, the mortgagee, and William Fowler, the purchaser of the mortgaged lots.

The facts were found by the court, and may be stated to be these :

On the 21st of December, 1844, Beatie borrowed of Butler $1525, and bought a stock of goods of Butler & Lynes, (partners in trade,) for $2147 52, and gave his note for the first named sum, payable on the first of January, 1846, with interest at ten per cent., and a note for the second named sum, payable on first of May, 1847, with ten per cent. interest from January 1st, 1846. To secure these debts, he executed on the same day a mortgage of lots 1, 2 and 3, in the town of St. Joseph, and a large tract of land in the county of Andrew, and five negroes, conditioned that if Beatie failed to pay said sums, or any part thereof, with the interest thereon, at the time the same should become due, Butler, the mortgagee, was empowered, upon thirty days' public notice being given in three of the most public places in the county of Buchanan, by posting up written advertisements describing the property and the place of sale, to sell for cash in hand said property in the manner following, to-wit : So much thereof, to be selected by Butler, as would satisfy the note for $1525 and interest ; the residue to be also sold in manner and form above stated, if required for the liquidation of the note for $2147 52. This mortgage was acknowledged and recorded December 23, 1844.

At the same time, Beatie and Butler executed an agreement, under seal, by which it was agreed that if Beatie should pay

the interest of the $1525 note, (which was due January 1st, 1846,) he should not be required to pay the principal before January 1st, 1847. This agreement was retained by Beatie and not recorded.

In 1845, Beatie died, leaving a widow and several infant children. Administration upon his estate was granted by the county court of Andrew county to Prince L. Hudgins. Beatie died in possession of lots 1, 2 and 3, in St. Joseph, and after his death, his administrator took possession by his tenants.

On June 4, 1846, Butler gave notice that he would sell the farm of 1000 acres in Andrew county, and the lots in St. Joseph, Nos. 1, 2 and 3, *at the town of St. Joseph*, on the 6th of July, 1846. These notices were posted up as required by the deed.

On the 15th of June, Butler went to Andrew county, and the county court, at his instance and with the consent of the administrator, made an order on the administrator to pay the interest on the $1525 note, and Butler was paid the amount of the interest up to that date. This payment was claimed and made under and by virtue of the article of agreement of December 21st, 1844. The agreement was not produced at the time, but was found by the administrator long after the sale.

On the 6th of July the sale was made on the premises, and it was found by the court that they sold for their full cash value. St. Joseph, at the time of the sale, was a town of about five hundred inhabitants; and the business part of the town was confined almost entirely to two blocks adjoining the lots sold. The sale was well attended. Hudgins, the administrator, was present, but made no objection to the sale, and after it was over, directed the tenants of the lots to pay rent to Fowler; the purchaser. Fowler had no notice of the agreement in relation to the extension of credit, nor of the payment of interest, but knew of the possession of the lots by the administrator's tenants. At the time of the sale, all of Beatie's children were minors. No notice of the sale was given either to the widow or heirs of Beatie.

Upon this state of facts, the court was asked to set aside the sale and permit the heirs of Beatie to redeem the lots by paying the principal and interest of the purchase money paid by Fowler. The bill was filed in November, 1851. The Circuit Court refused to set aside the sale and dismissed the bill, and an appeal was taken.

*Napton*, (with *Abell & Stringfellow*,) for appellant. 1. The death of the mortgagor, Beatie, extinguished the power to sell. (*Gibson's heirs v. Jones*, 5 Leigh, 370.) 2. The mortgage and the article of agreement, executed at the same time, and relating to the same subject matter, are but one instrument. (4 Mass. 569. 1 Johns. Cases, 91. 15 Johns. Rep. 463. 3 Wend. 234. 8 Mo. Rep. 49. 13 Wend. 114. *Whitehurst v. Boyd*, 8 Ala. Rep. *Sewall v. Henry*, 9 Ala. Rep. 5 Pick. 395. 10 Pick. 250, 302.) 3. The agreement by which, upon payment of interest, on the $1525 note, the payment of the principal was deferred until January 1st, 1847, was a valid agreement. 4. The payment of *the interest* by Beatie's administrator, though made after the day fixed by the instrument, having been accepted by Butler, was as effectual as if made on the day. (15 Pick. 262. 10 Mass. Rep. 419. 11 Mass. 217. 1 Conn. 91. Co. Litt. 218, *a*. 3 Salk. 3. Cowp. 808. 2 T. R. 925. 1 Conn. 91.) 5. If the foregoing propositions be correct, it follows that the sale of the mortgaged premises on the 6th of July, 1846, was made six months before the debt was due. Such sale can convey no title to a purchaser, any more than a sale under a mortgage after the mortgage debt has been paid. A purchaser under a power buys at his peril, and if there is no subsisting power or authority to sell, no title is acquired, and this principle equally reaches the case of a *bona fide* purchaser without notice. (*Wood v. Colvin*, 2 Hill, 566. *Jackson v. Anderson*, 4 Wend. 482. *Stafford v. Williams*, 12 Barbour, 240. *Jackson v. Moore*, 18 J. R. 441. 1 Watts & Serg. 333. *Jackson v. McKinney*, 3 Wend. 234. *Devinney v. Smith*, 3 Johns. Ch. Rep. 344. 7 J. R. 217, 226. 6 Wend. 213. 11 Barbour, 191.)

Beatie v. Butler.

6. But it is insisted that Fowler had notice. The possession of Beatie and of his representatives, after his death, was known to Fowler before he bid for the land and before he paid his money. This was notice of every claim which the tenant could enforce against the vendor. (16 Ves. 249. 7 Ves. 436. 14 Ves. 596. *Landes* v. *Brant*, 10 Howard. 2 J. J. Marsh. 180. 3 Paige, 421. 5 Johns. Ch. Rep. 32.) 7. Where a trust or authority is delegated for mere private purposes, the powers of the trustees, whether express or implied, must be executed strictly ; and the principle applies equally to trusts, or powers coupled with an interest, as to mere naked authorities, where the trust or power does not survive. (8 Cow. 583–4. 4 Kent. 330.) 8. The notice of the place of sale was insufficient. (5 Leigh, 370. 3 Johns. Ch. Rep. 344–5. 7 J. R. 217. 1 Bibb, 257. 1 Peters, 138. 4 Dana, 185.) 9. Where the existence of a power depends upon some fact not apparent on the face of the deed creating it, the existence or non-existence of the fact must necessarily be established by parol. In such cases, all that courts can require is, that the tenant in possession shall act in good faith, and give the proper information when called upon. If his conduct or language mislead a purchaser, the latter would not be disturbed ; but if he is without fault, the equity of the former being equal to that of the latter, his legal title, having never been divested through the want of power on the part of the vendor, will be preferred.

*Gardenhire*, *Vories*, *Hall* and *Loan*, for respondents. 1. The power being coupled with an interest, Butler had power to sell after Beatie's death. (Story's Ag. § 489. 8 Wheat. 203–4–5. 4 Kent, 147. 5 Paige, 114. 1 Caines' Cases in Error, 1. 4 J. C. R. 37, 115. 10 Paige, 208. 3 Litt. 410. 1 Greenleaf's Cruise, book 2, p. 99.) 2. Fowler was only bound to look to the mortgage as he found it upon the record, and is not bound or affected by the agreement between Beatie and Butler for the postponement of the payment of the note to Butler, being a purchaser for a full consideration, without notice of the agreement. (14 Serg. & R. 334, 389. 7 Watts, 382.

21—VOL. XXI.

5 Pick. 459. 1 Paige, 208. 5 Binney, 314. Story on Ag. § 73. 12 Mod. 346. 3 Litt. 410, 423. 6 Johns. 144. 3 Pick. 177. 5 Gill & Johns. 383. 5 Vermont, 149. 1 Paige's Ch. Rep. 202.) 3. Our statute (R. C. 1845, tit. Conveyances, § 42,) provides that no instrument in writing, affecting real estate in law or equity, is valid except between the parties thereto, and such as have *actual* notice thereof, until the same is deposited with the recorder for record. As to the meaning of *actual* notice, see Story's Eq. § 399. 2 Bouv. Law Dic. 241. 8 Mo. Rep. 24. 13 Mo. Rep. 299, 300. 11 Metcalf, 247-8. 26 Maine, 484. 29 Maine, 140, 144, 145, 146.) 4. The possession by tenant was not even constructive notice to Fowler of the unrecorded agreement. It was not *adverse* to, but consistent with the title sold by Butler. At most, it could only impart notice of the tenant's title, and not of the landlord's. (Story's Ag. § 72-3. 5 Binney, 314. 2 Sug. on Vend. top p. 339. 7 Watts, 272. 2 Sumner, 486, 554-5-6-7. 23 Maine, 170.) 5. The notice of the place of sale was sufficient. It was reasonably certain as to place, and sufficient to prevent fraud or the sacrifice of the property. (12 Wheat. 570. 13 Ohio, 120. 13 Mo. Rep. 398. 14 Mo. 345. 7 Ohio, 16. 10 Mo. Rep. 96.) 6. Notice of sale to Beatie's heirs was not necessary. He himself would not have been entitled to notice, and they stand in no better condition. 7. The article of agreement did not affect the power of sale in the mortgage. It only gave Beatie a right to recover damages of Butler for a violation of its provisions. (1 Paige, 202. 3 Litt. 410. 6 Mo. Rep. 392. 7 Mo. Rep. 462.) 8. The interest was not paid until *after* the time fixed by the agreement, and so the condition, upon which the sale was to be postponed, was not complied with.

SCOTT, Judge, delivered the opinion of the court.

1. The argument that the death of Beatie should have suspended all proceedings under the mortgage, in analogy to the suspension of all process of execution under the administration

law, against the estates of decedents, cannot be maintained. The law may suspend its own process. As it gives the process, it may regulate it. But deeds of trust and mortgages, with the power of sale, arise from the consent and agreement of parties, and there is no propriety in depriving creditors of the fruits of their foresight and caution. The statute of the 25th January, 1847, is an answer to the argument. That statute, notwithstanding the death of the grantor, in a deed of trust recognizes a right of sale in the trustee, though its exercise is postponed for nine months after the death of the maker of the deed. At this term of the court, in the case of *Chase*, *adm'r*, v. *Grant*, *adm'r*, we have held that the death of a mortgagor did not suspend nor defeat the proceedings to foreclose a mortgage, given by the act concerning mortgages.

2. We do not see the force of the argument that the mortgage and the agreement to postpone the sale, are to be regarded as one instrument. It may be so ; yet the registry act is to be considered. If it requires an instrument to be recorded, and it is not done, the party guilty of the negligence must suffer the consequences. Beatie had his agreement in his pocket, and if he failed to put it upon record, it was his own folly. An innocent purchaser cannot be made to suffer for his neglect. The deed conveyed to Butler the land, with a power of sale. As the estate was in him entirely, it is impossible to see how the death of Beatie could affect his power over it. The distinction between the mere grant of a power and of an estate is obvious to every member of the profession, and is recognized on all occasions. Where there is a mere grant of power, the death of the grantor of the power extinguishes it. It cannot be exerted, because when exercised, the act relates back to the date of the power ; and as the author of the power is dead, he can do no act. To give it effect, would produce the absurdity of making a dead man do a valid and binding act. But, when the estate is granted, coupled with a power, then it is as though it belonged to the grantee, and was his own property. His conveyance at law is binding and effectual, whether he conforms to

the limitations imposed on the exercise of the power or not. But courts of chancery will, in such cases, compel the observance of the restrictions imposed on the trustee ; and if a vendee is cognizant of a violation of the trust, or is guilty of laches, in not informing himself of restrictions on the power, when he should have done it, he must suffer the consequences. But if the owner of an estate will convey it absolutely, with a power of sale, and a sale is made to an innocent purchaser, he cannot complain that restrictions were not complied with, which he himself has failed to make known.

We do not consider that the cases in which it has been held that a sale under a satisfied judgment was void, are in point. Here, there was no extinction of the debt. It remained and was unsatisfied. Neither the debt nor the power was extinguished. It was a mere question of time. The deed, as recorded, showed that the power might be exercised. If there were any impediments to its exercise, the ignorance of those impediments was caused by the laches of the grantor, and the consequences of his neglect cannot be visited on an innocent purchaser.

We do not see that the case of *Jackson* v. *McKinney*, (3 Wend. 234,) has any application to the controversy under consideration. There was no question made in that suit as to notice or the registry of deeds. The case turned entirely on the effect of a deed of conveyance under the statute of uses. That, too, was an action of ejectment.

3. We cannot perceive what the doctrine of notice has to do with this case. There is no one claiming an interest in the land in controversy but the heirs of Beatie. If Beatie were alive, could he set up any equity in himself, growing out of the fact that he had a tenant on the land ? Beatie had no equity as against the purchaser under Butler. How can the fact that Beatie had a tenant on the land give him an equity ? If the estate conveyed by him was justly sold, so far as the purchaser, Fowler, was concerned, even admitting that notice of the tenant's title was notice to him of Beatie's title ; it was Beatie's

Beatie v. Butler.

title he was purchasing, and it was that which he acquired. They who insist on the fact of notice in Fowler, seem to labor under the impression that the possession of the tenant of Beatie was notice to Fowler of the existence of the agreement postponing the sale. This is an error. At most, it could only be evidence of a title or right in Beatie, and, as Fowler was purchasing Beatie's right, conveyed by the deed to Butler, of what avail was notice of Beatie's right? The constant course is for the mortgagor to remain in possession of the mortgaged premises until a sale or foreclosure; and would it not be a monstrous doctrine that the possession of the mortgagor or his tenant, at the time of sale, should be constructive notice to every purchaser of every latent defect in the proceedings to foreclose the mortgage?

But the possession of the tenant, if notice at all, was only notice of his own right, not of that of his reversioner. This seems to be the settled doctrine. (2 Sug. 293. *Flagg* v. *Mann and others*, 2 Sumner, 557.) In this case, there is no tenant who is opposing the right acquired by Fowler, under the proceedings of the mortgagee to foreclose the mortgage.

4. But we do not consider that, under our statute regulating conveyances, that possession by itself can be considered as any kind of notice. If the fact of an adverse possession is brought home to a purchaser, it may be evidence to be left to the jury, with other circumstances, to receive that degree of weight to which they may think it is entitled. But mere possession of itself is no notice, either actual or constructive, under our statute of conveyances. This conclusion is arrived at, not by overthrowing English or American cases on this subject, but by giving to our statute that construction its language and spirit require.

It is a requirement of our statute that every instrument in writing that conveys any real estate, or whereby any real estate may be affected in law or equity, be recorded; and no such instrument can be valid, except between the parties thereto and such as have actual notice thereof, until it is recorded. In

this enactment, we may see a great advance to the measure of having all instruments in writing, affecting real estate, spread upon the record. This is done with a view to prevent strife, litigation and fraud. If one desires to purchase a tract of land and sees another in possession of it, what is more natural, under our law, than that he should go to the record and examine whether the person in possession has any deed or instrument in writing conveying to him any interest in it? If he finds none, to what other conclusion can he come than that the person in possession has only such an estate as by the statute of frauds and perjuries may be conveyed without writing, which can only be a lease or estate at will? Why should a purchaser go to the tenant to make inquiry of his estate in the land, when the law refers him to the record? In England, he goes to the tenant, for the obvious reason that there, by the general law, no deed is required to be recorded. It is this adherence to English authorities, made under a system of law which has little or no resemblance to ours, in this respect, which is daily depriving us of the benefit of our registry acts. We cannot be too cautious in adopting the English law on this subject, for, except in particular localities, it has never required deeds to be recorded; while the object of ours seems to be, to have every instrument affecting real estate spread upon the public records. In England, strained implications of notice are made to correct the frauds and injustice resulting from the want of a registry act. In this state, to affect purchasers with such implications is to mislead and deceive them. They have a registry law to protect them, and after they have resorted to it, and are assured of their safety, to affect them with circumstances which are little or no evidence of notice, would be a great injustice. So long as our courts adopt the English law with respect to notice, so long they weaken the effect of our registry act, by inducing persons having instruments in writing, affecting real estate, to withhold them from record, and introducing all the evils our statute regulating conveyances was designed to prevent. In states were there is a registry act, though without the

stringent provision that is found in ours, it has been held that the notice of an unrecorded deed, to affect a subsequent purchaser, must be such as, with attending circumstances, will affect him with actual fraud. A notice, merely sufficient to put a party upon inquiry, is not sufficient to break in on the registry act. (*Dey* v. *Dunham*, 2 J. C. R. 182. *Jolland* v. *Stainbridge*, 3 Ves. 478.)

Our statute uses the words " *actual notice.*" Now what is actual notice, and how is it to be proved? What is actual notice, we conceive, is a question of fact for a jury. When this is said, we suppose the matter is made sufficiently explicit. The jury will only find the facts when such evidence has been submitted to them as produces the conviction that a purchaser was really aware of the existence of the instrument which he seeks to defeat at the time of his purchase. Now what evidence is it to a jury that a purchaser had notice of the title of another in possession, when it is not shown that he was aware of the fact that there was an adverse possession. The fact that another is in possession, when known to a purchaser, may be submitted to a jury, in connection with other circumstances, to show that he had actual notice of an adverse title. But the mere fact itself, with nothing more, cannot, as we conceive, tend, in the least, to a conviction that there was any notice, such as is required by the statute. Actual notice does not require positive and certain knowledge, such as seeing the deed; but that is sufficient notice, if it be such as men usually act upon in the ordinary affairs of life. When it is shown that purchasers are affected with a knowledge of such circumstances, then the foundation is laid from which the inference of actual notice may be drawn. (*Curtis* v. *Mundy*, 3 Metc. 405.) In the states of Maine and Massachusetts, there are registry laws similar to those found in our code. In legislating upon the subject now under consideration, they require " actual notice," in order to affect a subsequent purchaser, with knowledge of a prior unrecorded deed, and these words, in their acts, receive the interpretation that has been given them in the preceding observa-

tions.　In the case of *Pomeroy* v. *Stephens*, (11 Metc. 244,) the court held that, "under the statute which provides that no unrecorded deed of an estate, in fee or for life, shall be valid except against the grantor, &c., and persons having actual notice thereof, evidence of open occupation of land, and fencing it, by a party who has an unrecorded deed therefor, is not sufficient to warrant the inference that a third person had any notice of such deed. It was said that, since this provision, no implied or constructive notice of an unregistered deed will give it validity against a subsequent purchaser ; that it was not sufficient to prove facts that would reasonably put him on inquiry. He is not bound to inquire, but the party relying on an unregistered deed, against a subsequent purchaser, must prove that the latter had actual notice of such deed." To the same effect is the case of *Stofford* v. *Weston*, (29 Maine Rep.) where the foregoing case is cited with approbation.

What has been said in relation to the doctrine of notice, is only intended to be applied to the notice alluded to in our statute concerning conveyances, or, in other words, to that notice which is set up to affect or defeat a subsequent purchaser or incumbrancer of an estate in favor of one holding the same or asserting an interest therein, under a prior unrecorded deed or instrument of writing. The learning in relation to notice, as applied in various other transactions, sometimes being founded on equitable notions, sometimes depending on considerations of policy, is not designed to be affected by any of the foregoing remarks.

5. We cannot say that the advertisement of the sale of the premises by the mortgagor, was not made in compliance with the terms of the deed. The deed required that the property sold and the place of sale should be described in the advertisement. The property was advertised to be sold in the *town of St. Joseph*. It is objected that this was too vague a description of the place of sale. It is not pretended that there was any sacrifice of the property, growing out of the vagueness of the description of the place of sale. The administrator of the

estate of Beatie was present. The business of the town of St. Joseph was done almost entirely in two blocks. The property was sold on the premises, which adjoined these two blocks, and on the same street with them. The town contained about five hundred inhabitants at the time, and thirty or forty persons were present at the sale.

Judge Ryland concurs in affirming the judgment, though not in so much of the opinion as relates to what is notice, under the act concerning conveyances. Judge Leonard not sitting.

RYLAND, Judge. I concur in affirming the judgment, but do not concur in that part of the opinion relating to notice from possession under our statute.