Wm. C. MORRISON, impleaded with others, Plaintiff in Error, *vs.* GEO. S. MARCH, Defendant in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The Statute (*p.* 565, *Sec.* 68) requiring that a case shall be made whenever an appeal is taken, applies only to cases tried by a jury, and not to a trial by the court. But it seems that either the District Court, or this Court, after the case has come here, could, on a proper showing that a necessity therefor existed, order the parties to make up a case and attach it to the judgment roll.

When a purchaser buys land, or takes an incumbrance on it when it is in the actual possession of one other than the vendor, he is required to communicate with such tenants or occupants and find out the particulars of their claims and interests, and, also, from whom they hold. And where the tenants in possession held a contract for the removal of the buildings, as well as leases of the ground, a subsequent mortgagee takes subject to the right, as its existence could have been ascertained by the exercise of ordinary prudence.

Points and authorities of the Plaintiff in Error :

*First.*—That the Defendant below, W. C. Morrison, against whom the judgment in this case was rendered, was at the time of the execution of the mortgage to the Defendant in Error on the 12th of June, 1858, and ever since that time, the owner and in the actual possession of the buildings and improvements upon lots eight and nine, in block twelve, in the city of Saint Paul proper, and in the complaint described, and that the said George S. March, Defendant in Error, had legal and constructive or implied notice of the said W. C. Morrison's (Defendant below) estate in and ownership of the building and improvements upon the said lots, at the time of taking said mortgage, and to the extent of the said Defendant below ownership therein and title thereto, as appears from the finding of the facts duly made and found by the Judge of the District Court, and filed of record in the cause, and that the said mortgage was made, executed and received, subject to the estate and ownership of the Plaintiff in Error, in and to said buildings. *Willard's Eq. Jurisprudence, page* 251 ; 3 *Bar. Ch. R. p.* 316, *Bank of Orleans vs. Flagg* ; *Story's Eq. Jurisprudence, p.* 387, *Section* 400 ; 2 *Paige R. p.* 300, *Goveneur vs. Lynch;* 3 *Paige R. p.* 420, *Grimstone vs. Carter;* 5 *Johnson Ch. R. pp.* 29 *and* 32, *Chesterman vs. Gardiner ;* 6 *Wend.*

*pages* 213 *and* 226, *Tuttle vs. Jackson;* 2 *Green, page* 143, *Dahl vs. Paige, and cases cited;* 5 *Barbour, page* 534, *Brice vs. Brice;* 4 *Kent's Com. p.* 179; 1 *Merivale English Ch. R. p.* 282, *Allen vs. Anthony;* 2 *J. J. Marsh Ch. R. p.* 180, *Buck vs. Halloway;* 2 *Ves. jun. p.* 437, *Taylor vs. Stibbert;* 13 *Ves. jun. pp.* 118 *and* 120, *Hiern vs. Mill;* 16 *Ves. jun. p.* 249, *Daniels vs. Davidson;* 17 *Ves. jun. p.* 433, *S. C.; Dart's Venders and purchasers of Real Estate, p.* 403, *note, Chesterman vs. Gardiner cited; same, p.* 408, *cases cited in note; see, also, case of Willoughby and Powers, vs. B. D. Miner, December Term of this Court,* 1859.

*Second.*—That it appears from the finding of the facts, and decision of the Judge of the District Court aforesaid, that the value of the said lots, covered by the mortgage of the Defendant in Error, exclusive of the buildings thereon, was $7,500, and that the said Defendant in Error has since the maturity of said note and mortgage, and since the removal of the two-story building therefrom as described in the complaint, foreclosed the said mortgage, and sold the said lots for the full amount of the debt secured thereby, including all interests and costs and charges thereon, and that the said debt secured by said mortgage has been fully paid, satisfied and discharged by such sale and the proceeds thereof.

*Third.*—That the two-story building, the value of which was found in the judgment rendered therefor by the District Court, was actually detached, separated and removed off and from the said mortgaged premises before the commencement of this action, and before the mortgage of the Defendant in Error was foreclosed, or proceedings of foreclosure commenced, and therefore the Defendant in Error was not, and is not entitled to recover the value of the same.

*Fourth.*—That the judgment rendered in the case for the value of the two-story building, against W. C. Morrison, Plaintiff in Error, upon the facts found by the said Judge was unauthorized and erroneous in law and in fact.

*Fifth.*—That the decree or order made for a perpetual injunction was and is erroneous, and ought to be reversed upon the facts found in the case.

*Sixth.*—That judgment ought and should have been ren-

dered for the Plaintiff in Error upon the facts found by said Judge.

Points and authorities of Defendant in Error :

*First.*—There being no case or bill of exceptions, there is nothing to review in this court. *Ullman vs. Bazille*, 2 *Min.* 134; *Hunt vs. Bloomer*, 3 *Kernan*, 341; *Johnson vs. Whetlock*, 3 *Kernan*, 344; *Turner vs. Haight*, 16 *New York*, 465; *Westcott vs. Thompson*, 16 *New York*, 613.

And in these cases it is decided that any statement of the conclusions of law or of fact stated in the decision of the court or report of Referee is not sufficient to raise any question. *See specially Opinion of Comstock, J.* 3 *Kernan*, 349.

The Compiled Statutes, too, state, page 565, "That if an appeal be taken a case must be made."

*Second.*—Even should the court entertain this case, there is no error apparent on the record. The complaint sets out a case showing damage already done to the interest of the Plaintiff by impairing his security. Such an action will lie. *Van Pelt vs. McGraw*, 4 *Comstock*, 110.

The question would thus be resolved into one of excessive damages or whether any damages had been actually suffered by the Plaintiff.

The decision of a court on such a question certainly cannot be reviewed by writ of error—the more especially where no case is made.

*Third.*—Again, on the question of damage itself the decision of the Judge seems to imply that on the trial a sale of the premises was proved, and that the Plaintiff became the purchaser.

If so, his title related back to the giving of the mortgage, and he could maintain an action in the nature of waste for any injury done to the inheritance *ad interim*. *Rich vs. Baker*, 3 *Denio*, 79; *Jackson vs. Ramsey*, 3 *Cowen*, 75, the first being after and the latter before the Revised Statutes.

SMITH & GILMAN and M. E. AMES, Counsel for Plaintiff in Error.

ALLIS & PECKHAM, Counsel for Defendant in Error.

*By the Court.*—FLANDRAU, J.   Previous to, and on the first day of April, 1857, R. M. Spencer was the owner of lots eight and nine, in block twelve, in St. Paul proper.   On the first day of April, 1857, there were upon the said lots three buildings, which said Spencer sold to Langley & Scales.   On the 21st day of October, 1857, Scales sold S. S. Eaton an undivided half interest in two of the buildings, one of which was a two-story, and one a one-story building.   On the 22d day of October, 1857, Langley sold to Eaton the other half of the buildings, in which he had already purchased the interest of Scales, and also the third building.   On the 8th day of January, 1858, Eaton sold to W. C. Morrison, the Plaintiff in Error, the one-story building, the whole of which he had purchased from Langley & Scales, and afterwards, and before the 12th day of June, 1858, he sold to Morrison the two story building.   Morrison, previous to the 12th day of June, 1858, went into the possession of the buildings by leasing them to tenants who were in the actual occupation of them before, on and after the 12th day of June, 1858.   All of the leases had expired before the commencement of this action.   The original conveyance from Spencer to Langley & Scales contained the stipulation that the buildings were to be removed from the lots between the 1st day of May, 1857, and the 15th day of October, 1858. Morrison, however, did not remove the buildings within the stipulated time, but paid Spencer ground rent for allowing them to remain.

On the 12th day of June, 1858, the Defendant in Error, March, loaned money to Spencer, and took a mortgage on the lots in question, to secure the same, and on the same day had the same duly recorded.   None of the conveyances above enumerated were recorded.

After the leases of Morrison's tenants had expired, he commenced to remove the two-story building from the lots, and had actually removed the same entirely off the land when the injunction issued in this case was served upon him.

The Plaintiff asks a perpetual injunction against Morrison and Spencer, and all claiming under them, from removing the buildings, and for damages, &c.   The court granted the relief sought, and made the injunction perpetual against further

interference with the buildings, and gave damages for the value of the house removed, in the sum of five hundred dollars.

The court finds as a fact that the lots, exclusive of the buildings, were worth $7,500, and that the Plaintiff has foreclosed his mortgage and purchased the land for the full amount of his debt, principal and interest, which was considerably less than the value of the land.

The court, also, finds that March did not make any inquiry of the tenants, who were in possession, as to their interests or that of their landlord, but that Spencer told him that he (Spencer) was unable to collect rent from such tenants.

No case is made, nor bill of exceptions. The record brings up the decision of the court with the findings of fact and law separately, and the judgment thereon. The Counsel for the Defendant in Error insists that the questions can only be reviewed by making a case or bill of exceptions. He cites us to several cases in the Court of Appeals of New York, which sustain his views so far as a review in that court is concerned, but we do not think that the same rule necessarily applies to this. In the case of *Ullman vs. Bazille*, 2 *Minn.* 134, we decided that the report of a Referee, as well as the decision of the court, should state the facts and conclusions of law separately, and that we would not review any questions which were not properly of record, except upon a case or bill of exceptions. In that case the Referee had attempted to insert in his report all the evidence, and his rulings, and the exceptions of counsel, which we held to be improper, because such questions were not properly of record, unless made so by incorporating them in a case or bill of exceptions, and attaching it to the record; but the question whether the special findings of fact by the court or Referee justify the conclusions of law which he draws from them, and the judgment which follows, are properly of record, because they go into the judgment roll and form part of it. *Comp. Stat.* 566, *Sec.* 75; *Ib.* 562, *Sec.* 41; *Ib.* 564, *Sec.* 54.

The counsel says that our statute makes it imperative that a case shall be made whenever an appeal is taken, and cites *Comp. Stat. p.* 565, *Sec.* 63. But it will be seen on a careful

examination of this Section, that it only applies to cases tried by a jury, and not to a trial by the court, where the decision may be filed out of term as well as in term.

. It is our opinion that the reason the statute requires the Judge to file his decision in writing, stating the facts and conclusions of law separately, is to allow this court to review the question whether the facts sustain the conclusions. It has always been the practice in this court ·to review a case thus presented, although the question has not been directly made before, of the necessity of a bill of exceptions or case that I now remember: In the case of *Baldwin vs. Allison*, 3 *Minn.* 83, the Judge had made his decision without writing, or a statement of the facts and conclusions separately, and we refused to hear it, and sent it back for correction in this respect, which was accordingly done, and the case entertained and determined upon the decision.

The Counsel for the Defendant in Error urges another reason for the necessity of a case or bill of exceptions which is more forcible, and may prove the necessity in some .cases, while it fails in showing any good reason why it should become an universal rule. He says the Judge may have erred in his conclusions of fact, and been right in his conclusions of law, and *vice versa*. That as this case comes here, if we find the law not sustained by the facts as found, we are obliged to reverse the judgment; whereas, if the evidence upon which the facts were found was before us, as it would be if a case was required, we could correct the facts first, and thus by harmonizing them with the law as found, the judgment would not be disturbed.

There are several reasons why this should not be made a general rule, by imposing the duty of making a case upon the appealing party; while there are good reasons also why in some cases the successful party below should have the right to present the whole case. The first and insuperable obstacle rests with the statute, which allows the appealing party to come up without a case. The second, and very important reason, is in the rule that in almost all cases the findings of fact by the court are as conclusive as those found by a jury. It is a mistaken idea that a case tried by the court comes to us

in the same condition for review, that equity cases formerly came to the Chancellor from the decision of the Vice Chancellor. Under the practice in chancery, as it formerly existed, the testimony in all cases was taken out of court by examiners, and reported in writing, and upon the written testimony the Vice Chancellor (if it came originally before him) made his decree. The appeal to the Chancellor took up the same evidence exactly that was before the lower court, and gave the Chancellor sitting in review the same opportunity of judging of the facts that was enjoyed by the lower court.

Under our practice the case is very different. The testimony is taken in open court orally before the Judge who sits upon the facts in exactly the same manner that a jury does, and enjoys all the advantages possessed by a jury of judging of the credibility of the witnesses from their deportment on the stand, the amount of intelligence displayed by them, and the many other circumstances incident to a personal examination, which are often the most valuable auxiliaries in a search for truth, and which are wholly denied to a court of review. The same reasons, therefore, that restrain appellate courts from interfering with the verdicts of juries, apply with nearly the same force in almost all cases to decisions made by the court sitting as a jury. These remarks, of course, are addressed to those cases in which the testimony is that of witnesses, sworn and examined in the presence of the court. Cases may, and often do arise, in which the only testimony introduced is documentary, or where the testimony was taken and reported to the court by a Referee. In such cases the court above, if it thought it possessed the same facilities of judging of the facts that were enjoyed by the court below, would look into them with greater freedom, and reverse findings of fact, where it otherwise would feel restrained from interfering.

This alone is a good reason why a case should not be always required, and is the probable one why the legislature have not exacted it.

But suppose a case should arise as suggested by the counsel, in which he is successful below in obtaining a judgment which he sees cannot be supported upon the facts as the court has found them, and yet clearly is sustained by the evidence if he

can only get it before the court of review. The counsel says that if the appealing party was compelled to make a case or bill of exceptions, then he could introduce it into the bill or case by way of amendments. This is undoubtedly true ; but it seems to me clearly that if the statute leaves a party in such a predicament merely by an omission to provide for such a case, the court below, or this court after the case came here, could on a proper showing that the necessity in fact existed, order the parties to make up a case and attach it to the judgment roll. The statute does not forbid it, and I can see no reason why, when the statute gives the review, but fails to furnish a means of obtaining it so as to put the court in possession of the whole case, the courts may not, by decision as well as by rule supply the omission.

The statute expressly invests this court with full power and "authority necessary for carrying into complete execution all its judgments, decrees and determinations * * * and for the exercise of its jurisdiction as the supreme judicial tribunal of the Territory," (State) and provides that "it may, by order from time to time, make and prescribe such general rules of practice, both at law and in equity, and regulations for the said Supreme Court, and the government of the several District Courts not inconsistent with the laws, as it may deem proper," *Comp. Stats.* 475, *Sec. 5.* Section four, just preceding, defines what the jurisdiction of the Supreme Court is. The power for this court to order such a proceeding as I have suggested, may be found in the above cited law, and in the absence of such a provision, would exist as necessary and incident to its other powers. The power of the District Courts to grant it on their own motion may be found in the duty which devolves upon them to make return to all appeals to, and writs from this court, which duty involves the power to properly perform it. *Comp. Stat.* 621, *Sec. 6. See also Rules Nos.* 7, 8, 9, 11, 12 *and* 13, *of this Court,* 1 *Minn.* 450–1.

There is a general rule that actual possession of land is notice to purchasers of the possessor's title. 4 *Kent,* 179 ; 3 *Paige,* 437 ; 6 *Wend.* 226 ; 5 *John. Ch.* 33 ; 16 *Ves.* 254 ; 2 *J. J. Masrh,* 180 ; 3 *Minn.* 225, 238. The reason of the rule is this, as laid down in *Willard's Eqty Jurs.* 251: "A party

54

dealing with real estate of which another is in the actual possession, is bound to make inquiries of the occupants, and to ascertain the nature and extent of their interests. The legal presumption is that he will make these inquiries, and he is estopped to deny that he made them." That actual possession will carry this notice to the subsequent purchaser of the rights of the person actually in possession, we think there is very little doubt, but this case presents the more difficult question of whether this notice will extend behind the rights of the possessor to those of the person under whom he holds. If he is a tenant, whether his possession protects him in the enjoyment of his term, and also conveys notice of his landlord's title.

The authorities upon this question are somewhat conflicting. The rule that it does convey such notice is stated thus in *Willard's Eqty Jurs.* 251 : " The possession of the vendee's tenant is notice to a subsequent mortgagee," and he cites the cases of the *Bank of Orleans vs. Flagg,* 3 *Barb. Ch. R.* 421, which citation is incorrect as to the page, it should be 316. This case is exactly in point. Flagg made a contract with Graves for the sale of a house and lot, upon which there was a lease outstanding to Bedell, and then assigned the lease to Graves. Afterwards Bedell went into possession under his lease, as the tenant of Graves. While so in possession of the land, Flagg gave a mortgage on the premises to the Bank of Orleans. The Chancellor held that the possession of Graves through his tenant, was notice to the subsequent mortgagee of the contract of purchase, or in other words, of the title of the tenants' landlord. The Chancellor says in speaking of the possession and its effect as notice : " This in equity, was constructive notice of the rights of Graves; and if the officers of the bank had made the proper inquiries of the tenant in possession, they would necessarily have been led to the knowledge of the fact that Graves had or claimed some interest in the premises."

Mr. Story, in his treatise on *Equity Jurisprudence, Vol.* 1, *Sec.* 400, *page* 386–7, uses this broad language : " Indeed the doctrine is still broader ; for whatever is sufficient to put a party upon inquiry, (that is, whatever has a reasonable certainty as to time, place, circumstances, and persons,) is, in equity,

held to be a good notice to bind him. Thus a notice of a lease will be notice of its contents. So, if a person should purchase an estate from the owner, knowing it to be in the possession of tenants, he is bound to enquire into the estate which these tenants have, and, therefore, he is affected with all the facts as to their estates."

In a note to this section a great many cases are cited, and an extract from the opinion of the master of the Rolls delivered in the case of *Hanbury vs. Litchfield*, 2 *Mylne & Keene*, 629, which holds that where the tenant in possession is not the original lessee, but holds under a derivative lease, the purchaser is not bound to follow up the inquiry through all the leases to the first so as to be bound by the covenants in that lease.

There is a leading case in England that is cited in all the text books, which is reported in 16 *Ves.* 437. It is the case of *Davison vs. Daniels.* It was there held that where the tenant in possession held also a contract to purchase, that a subsequent purchaser had notice as well of the lease, as of the interest back of it, the contract to purchase; and the doctrine seems to be adopted in a very recent treatise on the law of vendors. 1 *Hilliard on Vendors*, 409.

A tenant in possession who desired that his wife should be substituted as *cestui que vie* in his lease for an old life, made a contract with his landlord that it should be done, and settled the estate upon his wife. The landlord sold the premises before making the change in the lease, and died. Upon a bill for relief against the purchaser, the court held that the circumstances carried notice of the contract. *Crafton vs. Ormsby*, 2 *Scho. & Lefroy* 583; 1 *Hilliard on Vendors* 409–10. *See also Taylor vs. Stibbert*, 2 *Ves.* 437.

In *Buck vs. Holloway's Devisees*, 2 *J. J. Marsh. Rep.* 180, the court say: "The only sensible rule, is, that actual residence upon the land is notice to all the world of every claim which the tenant may legally assert in defence of his possession."

In *Sugden on Vendors*, Vol. 3, *pages 469, 470, numbered at foot of page*, the case of *Daniels vs. Davison*, 16 *Ves.* 349, is cited. Also, *Allen vs. Anthony*, 1 *Mer.* 282; 2 *Ves.* 440; 13 *Ves.* 121; 17 *Ves.* 433. He says in commenting on the doc-

trine of how far the notice goes, derived from the actual occupancy of a tenant, that "the cases have gone so far, that a purchaser cannot be advised to complete a contract for an estate not in the seller's own occupation without a communication with the tenants, in order to ascertain what their interests really are."

This writer seems to think the cases have gone quite far enough in this respect.

In *Chesterman vs. Gardner*, 5 *John. Ch. R. p*.32, Chancellor Kent says: "It is a rule of equity that the possession of a tenant is notice to a purchaser of the reversion, of the actual interest of the tenant, and of the whole extent of that interest, and he is bound to admit every claim which could be enforced against the vendor." See also, *Gouverneur vs. Linch*, 2 *Paige* 300.

This examination of the authorities leads us to conclude that it is no more than reasonable to require a purchaser, when he buys land, or takes an incumbrance on it, when it is in the actual possession of some one other than the vendor, to communicate with the tenants or other occupants, and find out the particulars of their claims or interests, and also from whom they hold. In this case, if the tenants in possession had held this contract for the removal of the buildings, besides their leases of the ground, the subsequent mortgagee would have taken subject to the right, and the fact that their landlord held such rights, would have been reached by the exercise of ordinary prudence.

If we are right in this view of the case the judgment for damages cannot be sustained, nor can the perpetual injunction.

We will not discuss the questions which are made upon the fact of the mortgagee having foreclosed the mortgage, and become the purchaser for the full amount of his debt, after the commencement of this action. Whether he could or could not sell the premises and make his whole debt, and yet recover a large sum for the waste committed previous to the sale, may be questionable. He could sustain such an action after a strict foreclosure ; but when he becomes the purchaser at a sale, he ceases to be mortgagee, and occupies the same position in reference to the land that any other purchaser would.

On the announcement of the decision in this case, it was suggested by the counsel for the Defendant in error, that as the question was not argued, as to whether the contracts by which Morrison is alleged to have acquired his interest in the buildings, were sufficient to pass any title to them, that this decision should be limited in its effect to the facts as presented by the questions here argued. In justice to the parties, we state that as no point was made upon the character and effect of these several contracts, this court took it for granted that they were valid and effectual for the purpose of passing the houses, and the right to remove them, and decided the case upon that basis. When the attention of the court is not directed to a point, it cannot be expected to decide it; and even when points not made by counsel thrust themselves upon our notice in the examination of a case (which seldom occurs), we hesitate to consider them without argument unless they are very clear.

This case therefore will not be taken as concluding any future rights that may be affected by, or depend upon the contracts above referred to.

The judgment is reversed.