## DICKEY v. LYON *et al.*

### I. PER CURIAM.

1. **Notice: POSSESSION OF THE TENANT.** The possession of the tenant of real estate is constructive notice of the title of the landlord.

### II. LOWE, Ch. J., and DILLON and WRIGHT, JJ., COLE, J., not concurring.

2. —— **VISIBLE POSSESSION NECESSARY TO NOTICE.** L. sold two lots to D., and executed his bond for a deed, which was not recorded; D. built a

house upon one lot, and his tenant erected a shed or stable in the alley near the line of the other, upon which there was no fence or other improvement. While the property was in this condition, L. sold to T., who had no actual notice of the rights of D: *Held,* That there was no constructive notice to T. of D.'s equities in the unimproved lot.

### III. PER CURIAM.

3. —— PURCHASE-MONEY. While the purchase by T. would, as between him and L., entitle the former to the balance of the purchase-money due from D. if D. paid the same to L. without notice of the rights of L., he would not thereafter be liable to S. therefor.

*Appeal from Polk District Court.*

### TUESDAY, JANUARY 23.

THIS is a suit in equity to compel a conveyance by defendant to plaintiff, and quiet his title to certain lots, and was submitted to the court upon the following agreed statement of facts : " In 1856 the two lots in controversy were sold to John Dickey on time, by defendant, Lyon, who gave his notes for the purchase-money and took a bond for a deed. John Dickey built a house on one of the lots and entered into possession of the same in 1856 and 1857. The notes being nearly due, John Dickey made an arrangement with R. W. Dickey, the plaintiff, to take the property and pay out the notes. The bond from Lyon having been lost, upon request, Lyon made a new one to plaintiff dated November 19th, 1858. R. W. Dickey rented the house to different tenants, and before and on the 1st of November, 1858, the said Dickey was in possession of the same by a tenant. There was no record of any conveyance by bond, deed or otherwise, from Lyon on that date, to wit., November 1st, 1858. On that date Lyon sold the lots, with a lot of other land and lots, by deed duly recorded on that date in the recorder's office of Polk county; the gross sum paid for the whole being five thousand dollars, to defendant, Turner, who had no actual notice of the rights of Dickey,

and no other notice than that arising from the possession of Dickey's tenant. After that, Dickey, without notice of Turner's purchase, paid Lyon the balance due, and took a warranty deed for the two lots. Lyon is insolvent and has been since the commencement of this suit.

Plaintiff took a bond for a deed, and subsequently paid the same off. The two lots were contiguous; no fence was ever around the lots; no improvement was ever made on one of them, but a temporary shed for a stable was, at the time of the sale (to Turner), standing on a third lot or alley, just off the line of the lot, having no improvement on it, which was built by or for one of the tenants of Dickey, and was used by said tenant at that time, and was supposed by Dickey, at that time, to be on or to belong to the said second lot.

Upon this agreed statement of facts the court rendered a judgment requiring defendant, Turner, to convey to plaintiff by quit-claim, and quieting his title as against both defendants. The defendant, Turner, appeals.

*Withrow & Smith* for the appellant.

*Polk & Hubbell* for the appellee.

COLE, J. — I. Upon this agreed statement of facts, it is evident and uncontroverted that the defendant, Turner, has
1. NOTICE: the legal title and may hold the same, except so
possession
of a tenant. far as he was charged with notice of the plaintiff's equities in the property at the time of his purchase. The plaintiff held possession of the property by his house situated on one of the lots, and which was in the actual occupancy of the tenant at the time Turner purchased. The question then legitimately and necessarily arises whether the possession of the tenant is constructive notice of the landlord's title, or only of the interest of the tenant

himself in the premises? The question is a new one in this State, and is full of difficulty, whether we seek its solution upon elementary principles or by reference to adjudicated cases:

The general rule is, that whatever puts a party upon inquiry amounts, in judgment of law, to a notice of all such facts, as by the exercise of ordinary duty and diligence, would be developed by the inquiry. Again, it is stated as a general doctrine, that if a person purchases real estate which he knows to be in the occupation of another than the vendor, he is bound by all the equities which the party in such occupation may have in the land. These rules are frequently used in the books as synonymous, and are, by our best legal writers, interchangeably employed in relation to the same subject matter. But it is evident that if whatever is sufficient to put a party upon inquiry is held to be good notice to bind him that he may be charged with notice of and bound by equities other than those which pertain to the *party in occupation;* since an inquiry of such party would almost necessarily develop the title of the party under whom he claimed. The rule first stated seems, therefore, to have a broader scope than the latter. To give effect to this broader rule, will recognize the correctness of and give force to the other; while to limit ourselves to the latter, will amount to a repudiation of a portion of the former.

But the adjudications upon the question are more irreconcilable than the elementary rules just stated. In *Flagg* v. *Mann,* 2 Sumn., 486, and in *Beattie* v. *Butler,* 21 Mo., 313, it was expressly held, that the possession of the tenant was not notice of the lessor's title, but only of the equities of the tenant. The opinion in the case of *Flagg* v. *Mann* was delivered by Judge STORY, and evinces his characteristic research. So far as authority is concerned, it is based alone upon the text in 2 Sug.

on Vend., 1056 (marg.), § 61, and Mr. Sugden cites no cases in support of his text. Nor would such citation be necessary to its full force as authority, save in case of conflict. That such jurists as Justice STORY and Mr. Sugden have enunciated a certain doctrine, is at least ordinarily sufficient to justify obedience to it. See, also, 4 Kent Com., 170. The case of *Beattie* v. *Butler, supra,* follows *Flagg* v. *Mann,* and takes the rule for granted. See, also, *Barkhart* v. *Greenshields,* 28 Eng. Law and Eq., 77.

On the other hand, it has been repeatedly held, after thorough examination, by the Supreme Court of Pennsylvania, that the possession of a tenant operates as notice, not only of his own title but of that of the landlord under whom he claims. *Vide Sailor* v. *Hertzog,* 4 Whart., 259; *Hood* v. *Fahnestock,* 1 Penn., 470; *Kerr* v. *Day,* 14 Id., 112; 117, and authorities cited, and *Wright* v. *Wood,* 23 Id., 120, 130; see, also, *Boggs* v. *Vanney,* 6 Watts & Serg., 474. The same doctrine was expressly held in *Pittman* v. *Gaty et al.,* 5 Gilm., 186; but, although it was the pivotal point in the case, it does not appear to have received a careful or thorough examination, but rather to have been taken for granted as a well settled rule. In the case of *Morrison* v. *March,* 4 Minn., 422, the doctrine underwent a reasonably thorough examination, and, upon a review of the adjudications and elementary authorities, it was held, that it is no more than reasonable to require a purchaser, when he buys land or takes an incumbrance on it, when it is in the actual possession of some one other than the vendor, to communicate with the tenants or other occupants, and find out the particulars of their claims or interests, and also from whom they hold.

In the case of the *Bank of Orleans* v. *Flagg,* 3 Barb. Ch. 317, it was expressly held, per WALWORTH, Chancellor, that the possession of the tenant, was, in equity, constructive notice of the rights of the landlord. And in *Buck* v.

*Holloway's Devisees*, 2 J. J. Marsh. (Ky.), 180, the court say: "The only sensible rule is, that actual residence upon land is notice to all the world of every claim which the tenant may legally assert in defense of his possession." See, also, Will. Eq., 251, and 1 Hill. on Vend., 409, 410.

Upon principle, it appears to us, that the adjudications of the courts of Pennsylvania, New York, Illinois, Kentucky and Minnesota cited *supra*, hold the better doctrine. Mr. Justice STORY in his treatise on Equity Jurisprudence, vol. 1, § 400, says: "If a person should purchase an estate from the owner, knowing it to be in the possession of tenants, he is bound to inquire into the estate which these tenants have, and therefore he is affected with all the facts as to their estate." This is the general doctrine, as laid down by all elementary writers, and illustrated by numberless decisions. A person who purchases an estate, in the possession of another than his vendor is, in equity, that is, in good faith, bound to inquire of such possessor what right he has in the estate. If he fails to make such inquiry, which ordinary good faith requires of him, equity charges him with notice of all the facts that such inquiry would disclose. Suppose the possessor is a tenant holding under a lease, an inquiry of such tenant would advise the purchaser, not only of the length of time and terms of tenancy, but also of the landlord, and hence, that some other person than his proposed vendor, claimed a right to the estate and was holding possession thereof by his tenant. Being thus advised, equity in vindication of ordinary good faith, requires him to ascertain the extent of right of such landlord in the estate.

Notice of a lease, it is said by Judge STORY, will be notice of its contents. 1 Story's Eq. Juris., § 400. Now, possession by tenant is notice to a purchaser of his lease, and hence of its *contents*, but being notified of its contents he is thereby notified that another than his proposed ven-

dor has or claims a right in the leased estate, and is holding possession of that title by his tenant, for the possession of a tenant is the possession of the landlord. It seems to follow, therefore, that if the possession of a tenant is notice of his lease and its contents, as the authorities uniformly concede, it must necessarily become notice of the fact that the landlord claims title and holds possession adverse to the proposed purchaser's vendor; and having notice of such fact, he cannot become a good faith purchaser of the estate. It was held in *Davison* v. *Daniels*, 16 Vesey, 437, that when the tenant in possession held also a contract to purchase, that a subsequent purchaser had notice not only of the lease and its contents, but of the interest back of it, the contract to purchase.

The possession of the land being in another than the vendor, is notice to the purchaser that his vendor has not a *perfect* title. Such purchaser is, therefore, put upon inquiry as to the defect in his vendor's title. There is no particular merit in the *possessor* whereby the law or equity would sanctify *his* title, but his *possession* becomes a notice to the purchaser of a defect in his vendor's title, whereby his is vitiated or tainted, and such notice inures to the benefit of the possessor and his landlord. By reason of the wrongs perpetrated under such sales, the statutes of some of the States declare the sale and conveyance of land in the adverse possession of another, absolutely void. *Griffith* v. *Dicken*, 4 Dana, 563; *Whitesides* v. *Martin*, 7 Yerg., 384; *Allen* v. *Smith*, 1 Leigh, 248; *Swett* v. *Poor*, 11 Mass., 549; *Wolcot* v. *Knight*, 6 Id., 418; *Williams* v. *Jackson*, 4 Johns., 489; *Sherwood* v. *Burr*, 4 Day (Conn.), 244.

Indeed, these statutes against sales of land in adverse possession, upon which the several decisions just cited were had, are said to be but declarative of a maxim of the common law, that nothing in action, entry or reëntry can be

granted. Coke on Lit., 214, § 347.  They are in substance
the same as the English statute of 32 Henry VIII, ch. 9:
and even some of the provisions of this statute are said to
have been copied from a statute passed in the reign of
Richard II.  If it be said that this doctrine of constructive
notice, by reason of adverse possession, is, to a greater or
less extent, an infringement upon the spirit of our regis-
tration laws, it may well be replied that it is nevertheless
a great modification of the severe rule of the common
law, as declared by the several statutes referred to, whereby
such conveyances of real estate in adverse possession were
held wholly void.

We unite, therefore, in the opinion that the possession
of the one lot by Dickey's tenant was notice to Turner of
Dickey's title thereto, and that Turner holds his apparent
legal title for the benefit of Dickey, and must convey the
same to him.

II.  As to the other lot upon which there was no improve-
ment, and, consequently, no actual visible possession, the
2. — visi-   majority of the court hold that there was no
ble posses-
sion neces-  notice whatever to Turner of Dickey's right to
sary to
notice.      or equity therein.  Turner being, therefore, a
purchaser, in good faith, for a valuable consideration, and
without notice of Dickey's claim or equity, cannot be
required to surrender his title to Dickey, so far as the
second lot is concerned.

But, in the view of the writer of this opinion, there
arises, as to the other lot, upon which there was no
improvement, in fact, a still more difficult question than
as to the first lot.  While I am not without much doubt as
to the rule applicable to the peculiar circumstances of
this case, which is without analogy in any of the adjudi-
cated cases within the scope of my examination, I am
inclined to hold that the plaintiff's equities should prevail
over the defendant's legal title.

It will be seen, by the agreed statement of facts, that the plaintiff acquired his title or equity under one contract of purchase; that he took possession of both lots, or his entire purchase, by building a house upon one lot and by building a stable, which he intended and supposed to be on the other lot, and which was used as appurtenant to the house. It will also be seen, that Turner purchased both lots at one and the same time, and, of course, in one and the same negotiation, and holds the title by virtue of the same conveyance. We have already seen, that Turner is charged with notice of Dickey's title to the one lot. Now, he could not have notice of that title without, at the same time, acquiring knowledge of his title to the other lot, since both were contained in one instrument. While I am satisfied that the possession of the second lot by Dickey's tenant was not so actual or visible as to amount, of itself, to constructive notice of Dickey's title thereto, yet, in view of all the facts in the case, the unity of acquisition, possession and control, and the impossibility of Turner's acquiring notice of the title to one, without also having knowledge of the title as to the other, I am content to affirm the action of the court below, and hold the plaintiff entitled to a quitclaim conveyance for the second lot also.

III. While it may be true that the purchase of the property by Turner, of Lyon, did give to Turner, as between *a. —— purchase-money.* him and Lyon, the right to receive the unpaid purchase-money, yet it is, in effect, but the assignment of a chose in action, and in order to perfect Turner's right, as against Dickey, he should have notified Dickey of such assignment. Any payment prior to such notice was a good payment, as against the assignee. 2 Pars. on Bills and Notes, 51; *McCarver* v. *Nealy*, 1 G. Greene, 360. The recording of the deed to Turner was not such notice as would defeat a payment made in good faith. *Cook and*

*Sargent* v. *Dillon et al.*, 9 Iowa, 407 ; *Baldwin* v. *Thompson*, 15 Id., 504.

So far as the judgment of the District Court directs the conveyance to and quieting of the title in the plaintiff, to the lot whereon the house stands, it is affirmed; but as to the second lot, the judgment of the District Court is reversed, and decree will be entered in this court accordingly.

Reversed.