## HUBBARD v. LONG AND BUSH.

1. **Notice: POSSESSION.** The purchaser of real estate takes the same charged with notice of the equities in the party in possession.

2. —— **EVIDENCE.** The sufficiency of evidence to establish *actual* notice considered and determined.

*Appeal from Marshall District Court.*

THURSDAY, APRIL 5.

A PROCEEDING in equity to perfect the title to certain lands specified, and to remove the cloud therefrom, produced by the alleged wrongful acts of the defendants. The prayer of the bill was granted and the defendants appeal. The facts of the case will sufficiently appear in the opinion of the court.

*L. W. Griswold* for the appellants.

*Boardman & Brown* for the appellee.

LOWE, Ch. J. — In December, 1855, the plaintiff purchased of the defendant, Long, and his wife, five forty acre tracts of land in section 10, twenty acres in section 15, and fifty acres in section 21, all in township 84, range 18 west. He paid therefor $2,700, and

took possession of the same. The deed was drawn by a scrivener, one H. H. Seymour. Forty acres of the land (a timber tract) in section 21 was (inadvertently, it is supposed) described as the southwest quarter of the northwest quarter, when it should have been described as the southwest of the northeast, being the forty that was in fact owned by the vendor, whereas the former was not his property. Without discovering the error, this deed was recorded, when another mistake was supplemented by recording the lands as situated in range 19 instead of 18, the true range. At the time of the sale the vendor was in possession. His improvements comprehended forty acres inclosed and broken, a small dwelling and stable. He surrendered all to the occupancy of the plaintiff, who extended the improvements so as to cover the entire five contiguous forties in section ten, adding thereto an additional frame dwelling, an orchard and other improvements. That plaintiff purchased the land constituting the subject of this action of the defendant, Long, for a valuable consideration, some seven or eight years anterior to the date of Bush's purchase, is not questioned by any one. That an error intervened by the mistake of the drafter of the deed, in the description of the forty acre timber tract, situated in section 21, and that another mistake was made by the recorder, as to the range in which all the land was located, also admits of no doubt.

The question to be settled is, whether the defendant Bush, a subsequent purchaser, had notice of plaintiff's equities? The charge is that he had, and that his purchase of Long was a fraudulent one. He denies both averments and claims to be an innocent purchaser without notice.

We remark, first, that as to all the land, except the timber tract lying in section 21, they were contiguous parcels, making up the farm of the plaintiff; pretty much all improved; of which he had the actual, open and uninter-

rupted possession from the purchase down to the present time. This circumstance, in law, charges Bush with notice of plaintiff's equitable title thereto. See *Dickey* v. *Lyon*, 19 Iowa, 544, and authorities there cited; also *Baldwin* v. *Thompson et al.*, 15 Id., 504.

The chief point of the controversy, then, is narrowed down to the two tracts in section twenty-one, amounting to fifty acres of timbered land. These tracts are located, perhaps, about a mile and three-quarters from the home farm, and from them the plaintiff was regularly in the habit of obtaining all his fire and other wood. It is submitted, however, that this was not such possession as would in law charge the defendant, Bush, with notice of plaintiff's equities. But we forbear the expression of any opinion on this point at present, as we find enough in the testimony, taken as a whole, to justify the conclusion of an actual notice. Although Bush himself testifies that he had no such notice, the witness Brown proves it directly, and we discover in the testimony facts and circumstances which so strengthen and corroborate Brown's testimony as to give it, in our opinion, a preponderating weight over that of Bush. Let us refer to some of these.

2. —— evidence.

After Long sold and gave possession of these lands to plaintiff, he remained three or four years in the neighborhood; Bush, also, during the same time, lived within a few miles of the plaintiff's residence. The transaction between Long and plaintiff was a matter of common notoriety in the neighborhood. The constant use which plaintiff made, during all this time, of the timber land in question, could scarcely, it would seem, have escaped the attention of any one. Long was supposed to be insolvent. Bush was his creditor, and spoke of losing his claim, because of Long's inability to pay. They both removed to Missouri. Occasionally thereafter they returned to Marshall county. They were there in the year 1861.

Long had ascertained that the land which he had sold and conveyed to plaintiff was misdescribed in the deed, and expressed a determination to take advantage of it. He tried to resell the same while there, but failed. He offered it, among others, to Bush. Bush desired Long to obtain from one Timothy Brown, a lawyer, a statement of the record condition of the title of the land. This statement was furnished and paid for by Bush. But it contained only a statement of the title of so much of the land sold by Long to plaintiff, as was derived by Long through his wife, who was an heir-at-law of the estate of Hosea Dean, deceased; which, among others, included the timber tract now under discussion.

This statement, now appended to the depositions, shows upon its face, that one hundred and ten acres of this land had been sold by Long to Thornton Hubbard, the plaintiff, which covered all and more than all the land that Long had sold out of and derived from the Dean estate to plaintiff. So that in this way Bush was furnished with full information of the condition of the title of the timber tract before his pretended purchase of Long.

We have already said that this statement or abstract of title was limited to Long's interest, through his wife, to lands derived from the Dean estate, and did not, of course, include other lands of Long, in section 10 and elsewhere, which he had sold to Hubbard; and Bush desired a fuller statement of Long's lands, and requested that Brown should make such a statement and send it to him in Missouri, which was accordingly done, and sent through Long to Bush. Bush admits he received it, but does not produce it, nor does he very satisfactorily account for its absence; thinks he left it with his lawyer in Missouri by the name of Downing. He also admits that he received another statement from Brown, of Long's interest in lands in Marshall county. This, with

other papers, he left with his agent, Doctor McRill, in the same county. McRill, in his deposition, is unable to produce it. He states, however, that he placed a package of Bush's papers in the hands of an attorney, Boardman, in Marshalltown, to examine, and protect, in some way, Bush's interests. Afterwards, Boardman found the above abstract of title, marked A, among his papers; thinks, under the circumstances, he must have obtained it from McRill. It is produced by him and appended to Brown's deposition. McRill affects to think that it does not resemble, in all respects, the statement which Bush gave to him, and fails to recognize it, but it is very clearly and fully identified by Brown as the paper which he had made and gave to Long for Bush, and which Bush afterwards confessed he had received. This paper contained facts and figures that should put any prudent man upon inquiry, who proposed to buy of Long the timber tract in question.

Besides this, there are other phases of the case, and circumstances shown tending to prove that Bush knew that there was a difficulty about the title to this land, to which it is unnecessary further to refer, but which accounts in part for the fact that Bush accepted of a quit-claim deed from Long, and only allowed him a mere fraction of the value of the land.

It is enough to say, that, passing through all of the evidence and considering it as a whole, we discover no sufficient reason for changing or modifying the decision below, and the same will be

Affirmed.