### Hubbard *vs.* Smith *et al.*

H., in September, 1843, conveyed a piece of land to S., who took possession and lived on the land, and made improvements thereon, but did not have his deed recorded until December, 1846. In November, 1843, H. executed a mortgage to L., which was recorded on the 29th day of the same month—L. at the time having no knowledge of the deed to S., nor that S. or any other person was in possession of the premises, or claimed title thereto. *Held:*

1st. That the words *actual notice* in R. S. of 1838, p. 260, § 25, were used in contradistinction to *implied or constructive notice*, and that notice to L. of the prior deed could not be implied from the possession and occupancy of the land by S.

2d. That S. was in actual possession of the premises, claiming adversely to H., at the time the mortgage was given by H. to L., and that the mortgage was therefore void, as at common law a grant of land (except a release) is inoperative and void if at the time of the grant he land is in the actual possession of another person claiming adversely to the grantor.

Case reserved from Wayne Circuit Court in Chancery. The facts appear in the opinion of the Court.

*Backus & Harbaugh,* for complainants.

*Wilcox, Gray & Van Dyke,* for defendants.

By the Court, Green, J.

Two questions are presented by the record in this case, for our consideration: 1. Whether Lanman, the assignee of the complainant, had actual notice of the prior unrecorded deed of the defendant, Smith, at the time of the execution of the mortgage from Hosmer to Lanman; and 2. If Lanman had not such notice, was the mortgage void by reason of the adverse possession of the lands in question, by Smith.

It appears from the stipulation entered into by the solicitors for the respective parties, that on the 19th day of September, 1843, Artemas Hosmer, who was the owner in fee, of the lands in controversy, executed, acknowledged and delivered to the defendant, Smith, a deed of conveyance thereof; which deed was not recorded until December, 1846; that ever since the execution of said deed, Smith has been in the constant, open, and notorious occupancy and possession of the premises, and since the 1st day of December, 1843, has resided thereon with his family, and that he has made valuable improvements thereon. On the 17th day of December, 1843, Hosmer executed the mortgage now sought to be foreclosed, to Lanman, who caused the same to be duly recorded on the 29th of the same month. Lanman, at the time of the execution of the mortgage, had no knowledge of the deed previously executed to Smith, nor that Smith, or any other person, was in possession of the premises, or claimed any title to the same, and never was, in fact, within twenty miles of the premises. By the R. S. of 1838, p. 260, § 25, which was in force until the 1st of March, 1847, it was provided that "no bargain and sale, or other like conveyance of any estate in fee simple or for life, and no lease for more than seven years from the making thereof, shall be valid and effectual against any other person than the grantor, and his heirs and devisees, and persons having *actual* notice thereof, unless it is made by a deed, recorded as provided in this chapter."

Did the possession of Smith constitute actual notice to Lanman, of the prior unrecorded deed? The case of Pomeroy *vs.* Stevens, (11 *Met. R.*, 244,) presented the same question, under a statute similar to ours, as above recited. That was a writ of entry. The parties both claimed title to the demanded premises, under Hiram Chapman. The demandant claimed under a levy upon the premises, made on the 8th of Nov., 1842, upon an execution against Chapman, in pursuance of an attachment alleged to have been made on the 6th of December, 1841. The tenant claimed under a deed made to him by Chapman, on the 4th of February, 1839, acknowledged on the same day, and recorded on the 10th of December, 1842. The defense was, that the demandant when he made his levy, and when he made his attachment, had actual notice of the tenant's prior unrecorded deed. In support of this defense, the

defendant offered evidence on the trial, to show that he was in the open occupation and possession of the demanded premises, and had made improvements of a permanent character. The Court held this evidence to be incompetent; and Wilde, Justice, in delivering the opinion of the Court, says that "since the Rev. Sts. C. 59, § 28, no implied or constructive notice of an unregistered deed can avoid a subsequent deed or attachment," and that "it is not sufficient to prove facts that would reasonably put the party upon inquiry. He is not bound to inquire." He also remarks, that a tenant for years, or for will, may have possession of real estate, and may build fences, and make other improvements thereon; or a party may have possession and make improvements, without any title by deed or by lease.

There is no pretence that Lanman the mortgagee, or the complainant Hubbard, is chargeable with any fraud, and the question depends entirely upon the true construction of the statute, if indeed, it can be said to admit of construction. The language used by the Legislature is clear and explicit, and it seems obvious that the term *actual notice* was employed in contradistinction to *implied or constructive notice;* and after a careful examination of all the authorities cited in support of a different interpretation of the law, I am unable to discover any conflict between the doctrine of those cases, and that laid down in Pomeroy *vs.* Stevens. Did Lanman have actual notice of Smith's deed? It is conceded that he did not. Did he know that Smith was in possession of the mortgaged premises? That is not pretended. The question then, does not seem to admit of argument, unless implied or constructive notice amounts to actual notice; all idea of which seems to be excluded by the clear and unequivocal terms employed by the Legislature. It seems to follow then, as a necessary deduction from the facts presented, that the unrecorded deed from Hosmer to Smith, was of no validity or effect as against Lanman. If then, Smith is compelled to rely upon his deed alone, that can afford him no protection against the mortgage. Has he established any other defense by which he can escape the consequence of his omission to record his deed. This involves a solution of the second question presented by the record, viz: Was the mortgage void by reason of Smith's adverse possession of the premises in question? It was conceded upon the argument, and seems

27

to be unquestionable from the facts presented in this case, that at the time of the execution and record of the mortgage, the defendant Smith was in possession of the premises, claiming under a title adverse to the mortgagor; but it is insisted on the part of the complainant, that the doctrine of the common law in regard to adverse possession, does not apply to cases of this kind, under the recording act before referred to. Let us look at the facts applicable to this branch of the case, as admitted by the stipulation, and then we shall be better prepared to elucidate the principle involved in this objection. In the fall of 1842, Hosmer entered into a contract with Henry B. Adams for the sale of the premises to him, at the price of $45, which was in their then state, about the true value thereof. Adams immediately entered into possession of the lands and commenced the erection of a dwelling-house and other buildings and improvements, which on the 19th September, 1843, were worth $450. His occupation of the premises was constant and uninterrupted until the last named day, previous to which time he had fulfilled his contract with Hosmer, by the payment of the purchase money and was entitled to a deed. On that day Adams sold, bargained and transferred to the defendant Smith, all his right, title and demand, of in and to said premises and the improvements thereon and the said contract, for the sum of $500, which Smith then paid, and thereupon received the deed of conveyance from Hosmer and his wife, and entered into and continued in the possession of the premises as before stated.

In the case of Briggs *vs.* Prosser, (14 *Wend.*, 227,) the action was, ejectment. The plaintiff having shown the legal title in himself, the defendant offered to show that some years previous to the trial, one Luce entered into possession of the premises under a contract to purchase of the plaintiff the premises claimed, for the sum of $100; that Luce paid the purchase money in fulfillment of his contract, and continued in possession until about three years before the trial, when he sold to the defendant, who entered and had since remained in possession. He also offered to prove repeated declarations of the plaintiff that he sold the premises to Luce, had received payment for the same, and that the premises belonged to Luce, all which evidence was offered for the purpose of establishing an *adverse possession;* but it being objected to by the plaintiff's counsel as inadmissible, it was rejected by the Judge, and the defendant excepted.

On the motion for a new trial in the Supreme Court, Nelson, Justice, delivering the opinion of the Court, says: "There can be no doubt that a person entering upon land, under a contract of purchase, unperformed on his part, does not hold possession adversely to the vendor. *After performance*, and an equitable title to a deed acquired, I perceive no reason why his possession may not become adverse, or in other words, there is nothing in the character of it, inconsistent with the idea of an adverse possession; whether it were adverse or not, would depend upon the circumstances of each particular case." It should be remarked, that the trial was had in 1834; that the offer of the defendant was, to prove that Luce entered under his contract of purchase in 1807, and paid the $100 in that or the succeeding year—more than twenty years before the trial; and that *nine* years before the trial, Luce told a witness that the premises in question belonged to the plaintiff; that he had no deed, and that the plaintiff could turn him out when he pleased.

In this case there are no contradictory proofs. The facts are admitted, and it seems very clear that Adams had the equitable title to the premises, before, and at the time of his assignment to Smith—that such title was vested in Smith, by the assignment from Adams, and was acknowledged by Hosmer, by his conveyance of the legal title, in fulfillment of the contract on his part, without claiming or receiving any other consideration for the premises. If the deed to Smith was to be regarded as invalid, for the purpose of establishing an adverse title as against the complainant, yet upon the principle laid down in Briggs *vs.* Prosser, the defendant Smith, would be protected by his adverse possession. The statute only affects the unrecorded *deed*, and makes it invalid and. ineffectual against persons acquiring title without actual notice. It does not, in its terms or its spirit, affect the equitable rights of persons in possession of lands; and to undertake to give it that effect, would be to pervert its objects, and instead of making it a protection against fraud, would be making it the instrument of the grossest frauds. The person who receives a deed of conveyance of land, and without taking possession, or furnishing any other tangible evidence of a change of property, neglects to record his deed, puts it in the power of a grantor to impose upon and defraud others, who might purchase without knowledge of the deed, unless the statute protects them in such pur-

chase.   In such a case, the common sense of justice of mankind, without regard to any technical rule of law or statutory provision, would unhesitatingly determine that the subsequent purchaser, who first records his deed, should hold the premises, and that the prior deed should be invalid as against him, because the first purchaser, by his own fault or neglect, enabled the grantor to commit the fraud.   This equitable and just rule was declared by the statute of 1838, and if properly administered, can never work injustice.   But in order to give it effect, without working the most mischievous consequences, it must stand with the principle of the common law, which has been fully recognized by this Court in the case of Bruckner's lessee *vs.* Lawrence, (1 *Doug. Mich R.*, 19,) and in Stockton *vs.* Williams, (*Ib.*, 546,) that a grant of land (except as a release) is inoperative and void, if at the [time of the grant the lands are in the actual possession of another person, claiming title adversely to the grantor.   Hence, when the Legislature in 1846, changed this latter principle, they also changed the law, so as *not* to require *actual notice* of a prior unrecorded deed.   (*R. S.*, 1846, *Chap.* 65, § 7, 29.)   It may happen that a purchaser of land upon payment of its full value, receives his deed, and takes possession under it; but before it is possible for him to have it recorded, he may lose it, or it may be destroyed.   It is impossible that he should give actual notice to all the world, of the execution of the deed.   Would the statute of 1838 cut him off from all means of protecting himself against a subsequent deed made by his grantor, and recorded?   It would be strange indeed, if such were the intention of the Legislature.   The common law gives him the means of protecting his homestead in such an emergency, and declares that so long as he maintains the possession adversely to his grantor, any subsequent conveyance by such grantor shall be inoperative and void.   All persons are bound to know this rule of law; and hence, they are bound to know at their own peril, not whether a deed has been made, but whether such adverse possession exists.

It must be certified to the Circuit Court for the County of Wayne, as the opinion of this Court, that the mortgage which is sought by the complainant in this cause to be foreclosed, is void, so far as it embraces the lands claimed by the defendant, Smith, and described in his deed from Hosmer and his wife, bearing date the 19th of September, 1843.