BRINKMAN VS. JONES.

MORTGAGE: RIGHTS OF MORTGAGEE: SEPARATE DEFEASANCE: HOW
    LEGAL TITLE ACQUIRED. *(1, 2)* Mortgage merely a lien. *(3)* Two
    instruments together held a mortgage. *(4-7)* Subsequent attempts to con-
    vert mortgage into absolute conveyance.
REGISTRY OF DEEDS: NOTICE: EJECTMENT. *(8-12)* "Actual notice" of
    rights hostile to recorded deed. *(13)* Pleading and proof in ejectment.

1. In this state, a mortgage, in whatever form, merely creates a *lien* upon
   the land, and the legal title remains in the mortgagor.
2. The fact that the mortgagee, who gets peaceable possession after condi-
   tion broken. cannot be ejected by the mortgagor before satisfaction of the
   mortgage, is not inconsistent with the doctrine above stated.
3. In 1870, A. executed and delivered to B. a deed of land, absolute on its
   face; and B. at the same time executed and delivered to A. a separate
   agreement under seal, witnessed and acknowledged, but not recorded,
   to reconvey the land to A. on payment by the latter within four years of
   $2,300 (which is recited to be the consideration of the deed), and such
   other indebtedness as might become due from A. to B., with interest
   payable semi-annually. *Held,* that the two instruments created a mort-
   gage.
4. In 1874, after default in payment of interest, A. surrendered said contract
   to B., who at the same time gave A. another agreement under seal,
   witnessed, but never acknowledged or recorded, which recited that the
   deed of conveyance above mentioned was for a consideration of $3,356,
   and by which B. agreed to reconvey the land to A. on payment by him
   of that sum with any other sums that might be due from him to B. on
   note, account or otherwise, with interest payable semi-annually; the con-
   tract to become void on any default. *Held,* that this transaction did not
   alter the relation of the parties as mortgagor and mortgagee, and would
   not do so even if a mortgage in this state conveyed the fee subject to be
   defeated by payment of the debt.
5. After default in complying with the terms of the contract of 1874, A., in
   1876, signed a writing indorsed upon a copy of said contract in B.'s pos-
   session, in which he stated that he had delivered his copy of said con-
   tract to his attorney, with directions to deliver it to B. on a certain day
   in case A. should not then have paid B. the amount of his indebtedness
   (which is specified); and also stating that such delivery to B. by the at-
   torney would release to B. all A.'s claims upon the land, and that B.
   was then to sell the same, and return the surplus, if any, to A. This in-
   dorsement was not sealed, nor acknowledged, and had but one witness;

Brinkman vs. Jones.

and there was no surrender of a note held by B. for a part of A.'s indebtedness, and no release of the other part. *Held*, that, though intended by B. to convert the mortgage into an absolute title, it was insufficient in form to transfer the title; and, even if that were otherwise, its terms would still leave B. in the position of a mortgagee.

6. A creditor receiving a conveyance of land from his debtor, not in satisfaction of the debt, but with power to sell the land to raise money to pay such debt, and return the surplus to the debtor, is merely a mortgagee.

[7. If, upon such conveyance, the relation of debtor and creditor should cease, but the grantee should still agree to return to the grantor any sum received on a sale of the land above the amount of the debt discharged, such a transaction, if fair and free from suspicion, might be sustained as a legal trust. Per TAYLOR, J.]

8. So far as our statute declaring the effect of the want of registry of a deed, as to subsequent purchasers, was adopted from any other state, it was adopted from Michigan, and not from Massachusetts.

9. One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the "actual notice" he would have received.

10. The "actual notice" of an unrecorded defeasance, required by the statute to defeat a subsequent purchaser's title (R. S. 1858, ch. 86, sec. 32), does not, however, include constructive knowledge imputed from actual, open and visible occupation, where such occupation is not *in fact* known to the purchaser.

11. The possession of a grantor is presumably adverse to the grantee, where it has continued for a long time after the grant, and is inconsistent in its nature with the grantee's rights by the terms of his deed; and knowledge of such a possession on the part of a subsequent purchaser is some evidence for the jury upon the question of "actual notice" of the grantor's rights.

12. In this action (which was ejectment by B.'s grantee against A.'s grantee of the land above mentioned), it was error, upon the facts in evidence (for which see the opinion), to take from the jury the question of "actual notice" to plaintiff of defendant's rights.

13. In ejectment, where the evidence shows that plaintiff's title is in fact only a mortgage, the suit must fail, even though the defense is imperfectly pleaded.

APPEAL from the Circuit Court for *Manitowoc* County. Ejectment, against *Alonzo D. Jones*. The case is thus

stated by Mr. Justice TAYLOR in his opinion as originally prepared:

"This is an action of ejectment to recover the possession of seventy-five acres of land situated in Manitowoc county. The defense is, that the plaintiff's interest in the land is that of a mortgagee, and therefore he is not entitled to recover the possession from the defendant, who claims to be in as grantee of the mortgagor.

"The facts appearing upon the trial in the court below are these: August 27, 1870, Benjamin Jones was the owner in fee of the lands in dispute. On that day, he and his wife executed and delivered to Theodore C. Shove a warranty deed of the premises, for a consideration, as expressed therein, of $2,300; which deed was on the same day duly recorded in the office of the register of deeds of Manitowoc county. On the same day, the grantee executed and delivered to the said Benjamin Jones a contract in writing and under seal, of which the following is a copy:

"'Whereas Benjamin Jones, of the city and county of Manitowoc and state of Wisconsin, has this day deeded to me, and conveyed by warranty deed, the following described land situate in the county of Manitowoc and state of Wisconsin, to wit: The E. ½ of W. ½ and W. ½ of the E. ½ of NW. ¼ in sec. 20, town 19, range 24 east, except five acres of land in said W. ½ of E. ½ of said NW. ¼ of said section, for and in consideration of the sum of twenty-three hundred dollars: Now therefore, in consideration of the said transfer, and of one dollar to me in hand paid by said Jones, I, Theo. C. Shove of Manitowoc, Wis., agree and bind myself, my heirs, executors, administrators and assigns, to redeem and convey to said Jones, his heirs or assigns, by quitclaim deed, at any time within four years from the date hereof, in case the said Jones shall pay or cause to be paid to me or my assigns the said sum of twenty-three hundred dollars, and such other indebtedness as may at any time be due to me, together with interest on all sums un-

paid at ten per cent. per annum, payable semi-annually, and all taxes assessed lawfully on said lands, and not otherwise.

" ' Given under my hand and seal at the city of Manitowoc, Wisconsin, this 27th day of August, A. D. 1870.

THEO. C. SHOVE.    [Seal.] '

" This contract was witnessed by two witnesses and acknowledged, but never recorded, and on the back were the following indorsements: ' $230, being interest for one year, paid on the within, August 27th, 1870. T. C. SHOVE.' ' $230, one year's interest, paid Jan. 17th, 1872. T. C. SHOVE.' When said contract was produced in evidence, there was written across the face of it: ' Surrendered and canceled July 15, 1874. T. C. S.'; and on the trial it was in the hands of Shove, and produced by him. On the 15th day of July, 1874, T. C. Shove made and delivered to Benjamin Jones another contract in writing, sealed, and witnessed by two witnesses, but not acknowledged or recorded, of which the following is a copy:

" ' Whereas, Benjamin Jones, of the city and county of Manitowoc in the state of Wisconsin, did, on the 27th day of August, A. D. 1870, deed and convey by warranty deed to me the following described land, viz: the east half of the west half, and the west half of the east half of the northwest quarter (E. ½ of W. ½ and W. ½ of E. ½ of NW. ¼) of section number twenty (20) in township number nineteen (19) north, of range number twenty-four (24) east, excepting five acres of land in said west half of the east half of northwest quarter, for and in consideration of the sum of thirty-three hundred and fifty-six and 96-100 dollars ($3,356.96): Now, therefore, in consideration of said transfer, and of the further sum of one dollar in hand paid by said Jones, I, Theo. C. Shove, of Manitowoc, agree and bind myself, my heirs, executors, administrators and assigns, to redeed and reconvey to said Jones, his heirs and assigns, by quitclaim deed, at any time within two years from the date hereof, in case the said Jones shall pay or cause to be paid to me, or to my heirs and assigns, the

said sum of thirty-three hundred fifty-six and 96–100 dollars, in United States gold coin, together with such other or further sum or sums of money as may be due to me on note, account or otherwise, together with interest thereon at the rate of ten per cent. per annum, payable semi-annually; and in case of nonpayment of the principal or interest, as above specified, then this contract shall be, from date of such nonfulfillment of either principal or interest, wholly void and forfeited and of no effect. Further, said Jones is to pay all lawful taxes assessed upon said above described land.

" ' Given under my hand and seal at Manitowoc, Wis., this 15th day of July, A. D. 1874.    THEO. C. SHOVE. [Seal.]'

" This contract was also in the possession of Shove, and produced by him on the trial. It seems that there were indorsements of interest on this contract, made in the hand-writing of Shove, but what the amounts were does not appear in the evidence. On the back of this contract was the following indorsement in the hand-writing of Shove: 'Copy of within held by Benjamin Jones this day left with J. D. Markham, with instructions to deliver the same to T. C. Shove on the 15th day of July, 1876, in case said Jones shall not then have paid to said Shove the amount of indebtedness, viz:    .

On contract. .......................................... $3,356 96
On note ............................................. $1,236 70

which delivery releases to said Shove all claims held by said Jones, on or in land within named. Then said Shove to sell said land, extinguish said debt; surplus, if any, to be returned to said Jones.                        B. JONES.'

*Jan. 3, 1876.*

" 'Witness, J. D. MARKHAM.'

" It was neither sealed nor acknowledged. Shove swears that this indorsement was in fact made January 31, 1876, and that the date is a mistake.

" Plaintiff also gave in evidence a warranty deed of the

premises from Shove and wife to plaintiff, bearing date Octo-
ber 12, 1876, duly witnessed and acknowledged, and recorded
October 12, 1876; consideration mentioned in deed $6,000.
Also a quitclaim deed of same lands from *Alonzo D. Jones*,
the defendant, and his wife, and Laura A. W. Jones, to Ben-
jamin Jones, dated March 12, 1874, recorded March 13, 1874.

" The evidence also showed that Benjamin Jones had occu-
pied the lands continuously, by tenants or in person, from 1857;
that he was in possession at the date of the deed in 1870, and
retained such possession down to January 8, 1877, when he
conveyed the lands by quitclaim deed to his son, *Alonzo D.
Jones*, the defendant, who was in possession when this action
was commenced, in March, 1877.

" Shove also testified that when the contract of July 15, 1874,
was made, he let Jones have tax certificates amounting to three
or four hundred dollars, which he sold to Jones at their par
value, with fifteen per cent. interest, and this sum, and possi-
bly a note of $200 against *A. D. Jones*, were included in the
sum mentioned in the second contract; was not positive that
he advanced any more money then which went in to make up
the sum of $3,356.96. He also swears that when the indorse-
ment was made on the contract of July 15, 1874, bearing date
January 3d or 31, 1876, they had an accounting, and he took
a note of Jones for the sum of $1,236.70 mentioned in the in-
dorsement of surrender, and that this sum was due at that
time, outside of the sum due on the contract of 1874.

" He also swears that the contract of July 15, 1874, was made
in his back office; ' Jones desired an extension of time for
payment; he said to Jones he did not wish to extend in that
form; that he had heard the agreement, as it then stood, might
be considered a mortgage; we made this new agreement with
the talk and understanding between us, that the old contract
would be canceled; that he told Jones he could not grant the
extension, for that old contract might be considered a mort-
gage, and it would subject him to a foreclosure and a year's

redemption. Jones said he would change it so there would not be any such equity of redemption, or necessity of foreclosure, existing; that Markham was then called in, and he instructed them what was needed for that purpose, and he carried it out in the new agreement written in the presence of Jones, written by himself. I expected by that to cut off the equity of redemption, if any existed; that was our agreement.' In regard to the indorsement made on the contract January 3d, or 31st, 1876, Shove says: 'Jones was being pressed by his creditors. He had not paid me the interest, I think, for a year, and the taxes were running on the land. I asked him why he did not pay them and the interest. He said he could not, and had not the money. I asked him how it would be at the maturity of the agreement. He said, 'In that case, if I don't pay, you take the land and sell it as we have agreed.' I said, 'Very well, Mr. Jones, if you desire that carried out;' and then, in the presence of Jones and Markham, I wrote on the back of the contract the indorsement, and Jones signed it. On the 15th day of July, 1876, or the next business day thereafter, I asked Markham how the Jones matter stood. He said he had no money, and here was the contract as agreed, and then surrendered it to me, and I have retained it ever since.'

"J. D. Markham, a witness for the plaintiff, testified: 'I remember the execution of the memorandum indorsed on the contract (meaning the indorsement dated January 3, or 31, 1876). It was done in my presence in Shove's office, and in mine partly. I received the copy from Jones and Shove together, both present. The memorandum was read to me at the time as my instructions. I put it in my safe, and afterwards gave it to Shove as directed; I presume about the time it was out. I surrendered it to Shove under the agreement. I think I was present when that agreement was made, July 15, 1874. I saw the former agreement of August 27, 1870; at that time the latter was delivered up to Shove. I heard and joined in the conversation between the parties. It was under-

stood that the new agreement was to take the place of the old one; that was the substance of the talk. In January, 1876, I was acting as attorney for both parties, retained by the year. I remember that I tried to impress upon Jones that in making this new contract he was putting himself into Mr. Shove's hands, or words to that effect; that the title would pass to Shove; that he would lose control, and would have to trust Shove.' On cross examination, he says: 'Jones was in my office, I should think, every day for a week before making this arrangement of July, 1874. He was specially anxious about this matter. He was not then able to redeem. He used to say, whether he meant it or not, that he didn't suppose he ever would. He said he should have to submit to Mr. Shove about it, and let him dictate about what should be done about the matter. My recollection is, that the time had expired, and he wanted to save the property, if he could, in some way, but don't recollect his saying he wanted more time. Jones was about eighty years old at this time. For his age, should say he was then a bright, intelligent business man, and understood the transaction perfectly. In 1876, his mind seemed to be clear, but not as active as he was.' "

By direction of the court, a verdict was rendered for the plaintiff; and from a judgment thereon defendant appealed.

*W. H. Seaman,* for the appellant, argued, 1. That the deed of August 27, 1870, with the separate agreement to reconvey, constituted only a mortgage (*Rogan v. Walker,* 1 Wis., 527, and subsequent cases in this court); and the rights of the mortgagor are exactly the same as in case of a "pure" mortgage, the only difference being in the manner of proof. *Kent v. Agard,* 24 Wis., 378; *Carr v. Carr,* 52 N. Y., 251, and cases there cited. 2. That the relation of mortgagor and mortgagee was not changed by the new contract of July 15, 1874, it being clear that security for a debt was still intended, and the rule being that an instrument once a mortgage is always a mortgage. *Flagg v. Mann,* 2 Sum., 533; *Dougherty*

*v. McColgan*, 6 Gill & J., 281; *Cotterell v. Long*, 20 Ohio 472; *Wilson v. Giddings*, 28 Ohio St., 554; *Batty v. Snook*, 5 Mich., 231; *Wright v. Bates*, 13 Vt., 341; *Rogan v. Walker*, *supra*.  3. That the transaction of January, 1876, did not destroy the relation of mortgagor and mortgagee, that of debtor and creditor being continued, and there being no conveyance from the mortgagor of his interest then subsisting.  *Odell v. Montross*, 68 N. Y., 499.  Decisions on this subject in Massachusetts, New Hampshire, Maine, Rhode Island, and perhaps some other states, are inapplicable here, because of the entirely different relation of the mortgagee to the title in those states.  4. That plaintiff was bound by the relations existing between his grantor and Jones.  (1) He had ample notice, aside from the possession of Jones, to at least put him upon inquiry.  "The "actual notice" of the statute may be something short of positive knowledge.  *Curtis v. Mundy*, 3 Met., 405; *Wilson v. Miller*, 16 Iowa, 111; *Maupin v. Emmons*, 47 Mo., 304; *Porter v. Sevey*, 43 Me., 519; note to *Hall v. Delaplaine*, 5 Wis., 218 (Dixon's ed.); id., 448.  (2) The grantor's continued possession of the land, known to plaintiff, was ample notice.  *New v. Farrell*, S. C. of Minn., 2 N. W. Rep., 202; 25 Wis., 71.  5. That ejectment will not lie where it appears that plaintiff is merely a mortgagee.  R. S. 1858, ch. 141, sec. 28; *Kent v. Agard*, 24 Wis., 378; *Carr v. Carr*, 52 N. Y., 251, and cases there cited.

*Joshua Stark*, for the respondent, argued, 1. That the surrender and cancellation of the defeasance, for a valuable consideration, July 15, 1874, operated to release the right of redemption and make Shove's title absolute.  *Harrison v. Trustees*, 12 Mass., 456; *Trull v. Skinner*, 17 Pick., 213; *Falis v. Conway Ins. Co.*, 7 Allen, 46; *Shubert v. Stanley*, 52 Ind., 46; *West v. Reed*, 55 Ill., 242; *Carpenter v. Carpenter*, 70 id., 457; *Maxfield v. Patchen*, 29 id., 42; *Vennum v. Babcock*, 13 Iowa, 194; *Caruthers v. Hunt*, 18 id., 576; *Green v. Butler*, 26 Cal., 595; 1 Washb. R. P., 496; *Youle v. Rich-*

*ards*, 1 N. J. Eq., 534. The doctrine of these cases does not depend upon the view held of the nature of a mortgage. In Massachusetts and Illinois the rights of mortgagor and mortgagee, as to the estate, remained substantially as at the common law; but in New Jersey, Indiana, Iowa and California, the mortgage is regarded as a mere lien for the debt. *Shields v. Lozear*, 34 N. J. L., 496; *Fletcher v. Holmes*, 32 Ind., 497, 513; *White v. Rittenmyer*, 30 Iowa, 268; Code of Cal., 1872, § 2927; *McMillan v. Richards*, 9 Cal., 365; 1 Jones on Mort., §§ 17–58. Even in Massachusetts and other states where the common law prevails, the courts attach to the estate of the mortgagor many incidents of ownership in fee. *Ewer v. Hobbs*, 5 Met., 1–3; *Howard v. Robinson*, 5 Cush., 119; *Wilkins v. French*, 20 Me., 111. The difference between their law and ours on this point is slight; one of remedy rather than of right. Even here, if the mortgagee, after default, has gone into peaceable possession, he cannot be ejected until the mortgage is satisfied. *Hennesy v. Farrell*, 20 Wis., 42; *Tallman v. Ely*, 6 id., 244. There is, therefore, no good reason why Indiana, Iowa, etc., and even Wisconsin, should not agree with Massachusetts and Illinois as to the effect of a deliberate surrender and cancellation of an unrecorded contract of defeasance. The policy of our legislation seems to accord with that of the states last mentioned. See R. S. 1858, ch. 86, sec. 32, as to the registry of defeasances. 2. That a deed and defeasance, to constitute a mortgage, must be *parts of one transaction*, being simultaneous in date, execution or delivery, and taking effect at the same time *(Harrison v. Trustees, supra; Weide v. Gehl*, 21 Minn., 449; *Second Wd. Bank v. Upmann*, 12 Wis., 499; 1 Washb. R. P., 480; 1 Jones on Mort., 245–8); and that, consequently, when the original bond of defeasance is surrendered and canceled, and a new one, of different date, and upon different conditions, substituted, the latter does not operate as a defeasance so as to constitute the original conveyance a new mortgage. *Trull*

*v. Skinner* and *Falis v. Conway Ins. Co., supra.* The cases cited on the other side are not in conflict with this view, except *Odell v. Montross,* 68 N. Y., 499.  3. That plaintiff was not affected by any equities between Shove and Benjamin Jones, existing at the time of his purchase, he having no "actual notice" of any unrecorded defeasance. R. S. 1858, ch. 86, sec. 32; same as R. S. 1849, ch. 59, sec. 27.  (1) Possession of land is in any case only *constructive* notice of the rights of the possessor, and does not satisfy the statute.  *Crassen v. Swoveland,* 22 Ind., 427, 434; *Newhall v. Pierce,* 5 Pick., 450; *Pomroy v. Stevens,* 11 Met., 244; *Mara v. Pierce,* 9 Gray, 306.  But the continued possession of the grantor of land after the making of his deed is not even constructive notice.  2 Washb. R. P. (3d ed.), 66; *Newhall v. Pierce* and *Crassen v. Swoveland, supra; Hennessey v. Andrews,* 6 Cush., 170; *Stoddard v. Rotton,* 5 Bosw., 378, 384; *Denton v. White,* 26 Wis., 679; *Van Keuren v. Central R. R. Co.,* 38 N. J. L., 165.  "Actual notice" means direct personal knowledge (Jones on Mort., § 579), and is distinguished from the legal or constructive notice which arises from the possession of information sufficient to put one upon inquiry.  *Brown v. Peck,* 2 Wis., 280; *Parker v. Kane,* 4 id., 16, quoting 1 Johns. Ch., 261.  Our statute above cited was taken in 1849, in very nearly the same words, from the Mass. R. S. of 1836; the same expression, "persons having actual notice thereof," was used in the next section of the Massachusetts statute as defining those purchasers who would be affected by a prior unrecorded deed; and was construed in *Pomroy v. Stevens, supra,* in 1846, as requiring "actual notice or knowledge of such deed," and excluding mere knowledge of "facts that would reasonably put one upon inquiry."  See also *Curtis v. Mundy,* 3 Met., 495; *Hennessey v Andrews, supra; Parker v. Osgood,* 3 Allen, 487; *Hubbard v. Smith,* 2 Mich., 207.  Counsel further contended that there was no evidence of any actual notice.  4.

That the defense was insufficiently pleaded, as it contained no offer to pay the amount due. *Plato v. Roe*, 14 Wis., 458.

TAYLOR, J.   The evidence as above recited, presents the case in the most favorable light for the plaintiff, and much more favorably, perhaps, than it would appear if all the details of it were given.

Upon this evidence the learned counsel for the respective parties do not differ as to the effect which must be given to the deed and contract of August 27, 1870.   Both admit that the deed of that date, connected with the contract of the same date, clearly established the relation of mortgagor and mortgagee between the parties.   It was a mortgage from Jones to Shove to secure the payment of the sum of $2,300, then owing by Jones to him, and any other sums which said Jones might be owing to said Shove for future advances, with interest payable semi-annually at ten per cent., the principal to become due in four years from the date.   It is insisted, however, by the counsel for the plaintiff, that the surrender of this contract of 1870, and the taking of the new contract by Mr. Jones, July 15, 1874, created a new relation between the parties; that the surrender of the contract which was the defeasance to the deed of 1870, left the absolute title to the lands in the grantee, Shove, and changed the relations of the parties from mortgagor and mortgagee to vendor and vendee, the mortgagee becoming the vendor, and the mortgagor the vendee.   The argument in favor of this view of the case is presented with great ability and clearness, so that its point and force are readily comprehended by the court.   On the other side, the counsel for the appellant has with equal ability and clearness presented the argument against the construction given to the new arrangement made in 1874, by the counsel for the respondent, and, as we think, has conclusively shown that no such result as is contended for could result from that arrangement.

The fallacy of the argument made in favor of the respondent's view of this case, lies in a mistaken view of the nature of a mortgage under the laws of this state. The argument made by the counsel would be almost conclusive if we could adopt his definition of a mortgage. If, as in England, and in Massachusetts, Maine, and perhaps some other of the United States, a mortgage conveyed the title in fee to the mortgagee, subject to a condition subsequent, upon the happening of which the fee would revest in the mortgagor, it would logically follow that where there was a release of the condition or defeasance, as it is called, the whole estate would remain in the mortgagee.

In this state, New York, Michigan, and some other states, a mortgage conveys no estate to the mortgagee, in the lands described in the mortgage. Its only effect is to give him and his assigns a lien upon the lands for the sum of money secured by it; and the title in fee to the lands mortgaged remains all the time in the mortgagor, subject to such lien. The mortgagee can no more be said to have title to or an estate in the lands mortgaged, than a person having a mechanic's lien or lien by judgment duly docketed according to law. The mortgagee has a lien created by deed, and the judgment creditor by the judgment of a court.

That this must be so is clear from the decisions of this court, as well as the uniform course of decision of the courts in those states where the laws upon the subject of mortgages are like those of this state.

By the laws of this state, the mortgagee is not entitled to possession of the mortgaged premises, and cannot maintain any action to recover the possession, either before or after condition broken. If he dies, the mortgage interest descends as personal property to his next of kin. Sec. 12, ch. 100, R. S. 1858. And if his personal representative is compelled to sell the estate mortgaged to collect the debt secured, and bids in the property for the benefit of the estate, the lands so bid in are to be still treated as personal assets in his hands. Sec. 13,

ch. 100, R. S. 1858. The personal representative of the mortgagee can release the same, in case of his death. Sec. 41, ch. 96, R. S. 1858. The executor or administrators of a mortgagee appointed in another state may release the mortgage in this state. Sec. 1, ch. 359, Laws of 1864. The interest of the mortgagee can be transferred even by parol; and a mere transfer of the debt to secure which it is given, transfers the interest of the mortgagee in the mortgaged premises, unless it be otherwise expressly agreed. *Rolston v. Brockway*, 23 Wis., 407; *Wilson v. Carpenter*, 17 id., 512; *Stark v. Brown*, 12 id., 573; *Hitchcock v. Merrick*, 18 id., 357; *Crosby v. Roub*, 16 id., 616; *Fisher v. Otis*, 3 Pin., 78; *Martineau v. McCollum*, id., 455. The payment of the debt secured, either before or after condition broken, destroys all claim of the mortgagee to the property mortgaged, without any release or other discharge of the same. *Fisher v. Otis*, 3 Pin., 78; *Babcock v. Perry*, 8 Wis., 277. In New York it is held that a tender of the amount due, after condition broken, discharges the lien of the mortgage. *Stoddard v. Hart*, 23 N. Y., 560; *Kortright v. Cady*, 21 id., 343; *Trimm v. Marsh*, 54 id., 599. The same doctrine is held by the supreme court of Michigan. *Caruthers v. Humphrey*, 12 Mich., 270. The mortgagee has no estate, as we have seen, which descends to his heirs as realty. He has none that can be seized and sold on execution against him, and none upon which a judgment docketed can be a lien; and the wife of the mortgagee has no dower in the mortgaged premises. In this state, since the passage of ch. 195, Laws of 1859, he can only acquire title to the mortgaged estate by sale upon foreclosure, that act having taken away the power of the court to bar the right of the mortgagor by what was formerly known as a strict foreclosure without sale.

On the other hand, the mortgagor holds the estate in fee notwithstanding the mortgage. He can only convey that estate as he can convey any other estate in fee, by deed duly executed. If he die, the estate descends to his heirs as other

real estate; his wife is entitled to dower therein; it can be
seized and sold in execution against him, and he is entitled to
the possession even against the mortgagee, until after fore-
closure and sale.   Under our law there does not appear to be
any way by which a mortgagee can acquire the title to the
real estate mortgaged, except by a foreclosure and sale, or by
a conveyance from the mortgagor or his grantee or assigns,
executed in such manner as to convey a title to real estate; or,
perhaps, by obtaining the possession of the mortgaged prem-
ises and holding the same a sufficient length of time to acquire
a title under the statute of limitations.

It was urged that, because this court has held that if the
mortgagee gets the peaceable possession after condition broken,
he cannot be ejected by the mortgagor without first tendering
the amount due on the mortgage, it has recognized a title to
the lands mortgaged in the mortgagee.

This does not follow.   These decisions simply recognize the
right of the pledgee to take the possession of the pledge if he
can, in order to pay himself out of the rents and profits; and,
if he receives enough out of such rents and profits to pay his
debt, his mortgage is thereby satisfied, and he may then be
ejected by the mortgagor.   See *Gillett v. Eaton*, 6 Wis., 30;
*Tallman v. Ely*, id., 244; *Stark v. Brown*, 12 id., 572; *Hen-
nesy v. Farrell*, 20 id., 42.   Neither of these cases puts the
right of the mortgagee to retain the possession after condition
broken on the ground that he has a title in fee or otherwise,
but upon the ground that it would be inequitable to turn him
out of possession until his debt was paid; and for the further
reason that the mortgagee ought not to be put to the cost of
a foreclosure sale to get possession or to pay his debt.   It is
possible that these cases may have gone in part on the theory
that, after condition broken, the mortgagee had some title to
the lands.   It is clear, however, that if the mortgagee had no
title before condition broken, he could not have any after.
The old theory of a mortgage was, that it conveyed the title,

subject to be defeated by the performance of a condition sub-sequent; and when the condition was not performed, the title became absolute. The execution and delivery of the mortgage gave the title to the mortgagee, and not the failure to perform the condition. It is also clear that if his mortgage did not give him title, his taking possession could not have that effect.

In the case of *Trimm v. Marsh*, 54 N. Y., 599, Commissioner REYNOLDS, in discussing this question on pp. 608-609, says: "Ordinarily the mere change of possession of real estate would not divest the legal title of the owner, and I can see nothing in the fact of actual possession by a mortgagee that should work such result. Legal estates in land cannot be transferred by the mere act of taking possession, whether with or without the consent of the owner, unless the possession be held adversely for a sufficient time to ripen into a legal title. The possession of a mortgagee is apparently attended with more incidents of legal ownership than any other mere possession. It is sanctioned by a right which defends the possession against the true owner of the fee until the mortgage debt is fully discharged. In such case, the creditor, instead of leaving the debtor in possession and relying upon his intangible legal lien for his security, takes the thing pledged in his own possession, and enjoys its use until his debt is paid. He must account for profits and waste to his debtor, and when his debt is paid by the receipt of rents and profits or in any other manner, his lien is extinguished and his possession is no longer justified." A similar view of the effect of the mortgagee's possession is taken by Commissioner EARL, p. 606. The cases in New York, where the statutes on the subject of mortgages are similar to the statutes of this state, all hold to the doctrine above stated, that, notwithstanding the mortgage, the title to the fee of the land remains in the mortgagor, and the mortgagee has only a chattel interest or lien upon the lands mortgaged. *Trimm v. Marsh, supra; Packer v.*

*R. R. Co.*, 17 N. Y., 295; *Power v. Lester*, 23 id., 527; *Runyan v. Mersereau*, 11 Johns., 534; *Kortright v. Cady*, 21 N. Y., 343; *Odell v. Montross*, 68 id., 499. To the same effect are the following cases in Michigan: *Moynahan v. Moore*, 9 Mich., 9; *Caruthers v Humphrey*, 12 id., 270–78. And this last case, as well as the case of *Humphrey v. Hurd*, 29 Mich., 44, holds that the mortgagor may maintain ejectment against the mortgagee in possession at any time before foreclosure.

It was urged by the learned counsel for the respondent, that a different rule might and ought to be sustained when the mortgage was created by an absolute deed, and the defeasance was either by parol or by a separate written instrument. We have examined the cases, and find that the same effect is to be given to all mortgages without regard to the form in which they are made.

This court held in *Kent v. Agard*, 24 Wis., 378, that, in an action of ejectment, the defendant might show by parol evidence that a deed absolute on its face, under which plaintiff claimed, was in fact given to secure a debt, and was therefore a mortgage; and, if the evidence established the fact, it was a defense to the plaintiff's action. In *Magoon v. Callahan*, 39 Wis., 141–45, and *Sage v. McLaughlin*, 34 id., 550–57, it was held that a mortgage in the shape of a deed absolute, with a defeasance in a separate writing, must be foreclosed in the same manner as a pure mortgage, and the premises be sold by order of the court, with like privilege of redemption to the mortgagor. These cases show that when the conveyance is shown to be a mortgage, no matter what its form, the title does not pass to the grantee, any more than it does where there is an ordinary mortgage. There is no good reason why the form should make any difference as to the rights of the parties. By a mortgage in its ordinary form, there is an absolute grant of the title to the lands, in terms, to the mortgagee, with a defeasance as a separate clause; the fact that this separate clause is in a separate paper, or by parol, does not in the

least enlarge or change the nature of the grant. The law has definitely said that, no matter what the form of the deed or conveyance, if it be given and intended as a security for a debt due, or for money loaned, it shall be a mortgage, with all its attributes, and nothing more.

It being admitted that the deed and contract of the 27th of August, 1870, was a mortgage, with all its incidents, we hold that the relation of mortgagor and mortgagee continued at the time this action was commenced, for the reason that Jones has never conveyed his title as mortgagor to Shove or his grantee, nor has Shove ever foreclosed his mortgage in any way known to the law.

The mere surrender of the contract of 1870, in 1874, certainly conveyed no title to Shove; and the indorsement made January 31, 1876, upon the contract of 1874, was not such an instrument as would convey the legal estate of Jones in the lands described therein. It was not sealed, and was only witnessed by one witness. If it could, under any state of the evidence, be construed into a contract which in equity would bind him to convey the legal estate, that would not help the plaintiff in this action of ejectment, in which he can only recover by showing a legal title in himself. The case of *Odell v. Montross*, *supra*, sustains this view of the case in all its circumstances.

We are also of the opinion that the contract of 1874 did not change the relations of the parties, even were it admissible in this state to hold, as it is held in Massachusetts, that a mortgage conveys an estate in fee to the mortgagee, subject to be defeated by the payment of the debt secured by it. The contract itself shows that, in the language of the witness Markham, it was a substitute for the one of 1870; it recites the deed of 1870, and says it is given for the increased consideration mentioned in the contract then made; and it requires the payment of interest on the increased amount. Construed as a contract for the sale of the land, it would be most peculiar.

It provides that the purchaser shall not only pay a specified sum, and interest, as the price of the land purchased, but that he shall pay as such price any further sums which the vendor may see fit to let him have, or debts which he may acquire against the vendee, during the two years the contract had to run. This peculiarity of the contract clearly indicates that it was not a contract of sale of lands owned by the vendor; but, on the contrary, that the nominal vendor held the lands of the nominal vendee in trust to secure the moneys then due and thereafter to become due to him from such vendee, which is of the very essence of a mortgage. It is in all its parts a sharp contract, made between a mortgagor and a mortgagee, by which it is attempted to change the nature of the contract, and work a release of the rights of the mortgagor, without an adequate compensation. Such a contract is always looked upon with suspicion by the courts; and we think it is not giving the transaction a strained construction to hold that it continued the relations of the parties as they were under the former contract; that it was a mere adjustment of the balance then due, and enlarged the mortgage so as to cover interest on the increased debt, and extended the time of payment.

The indorsement of January 31, 1876, is of a similar nature, intended no doubt by the grantee, Shove, to foreclose the rights of Jones, and convert that which was before a mortgage into an absolute title; but it fails to do so for want of formality, if for no other reason. But, independent of the insufficiency of the paper to transfer the legal title of Jones, it substantially leaves Shove in the position of mortgagee. He held the note of Jones for $1,236.70, which does not appear to have been surrendered at the time he took the surrender of the contract, nor does he give him any release for the $3,356.96; and he agrees to take the land and sell it to pay these debts, and return the surplus to Jones. This, standing alone, would constitute him a mortgagee, and he could not pass the legal title to the lands to his grantee without a further conveyance

from Jones. A creditor receiving a conveyance of real estate from his debtor, with power to sell the same to raise money to pay such debt, and not in satisfaction of the debt, and to return to the debtor any surplus arising from such sale, is nothing but a mortgagee. If, upon such conveyance, the creditor should discharge his debtor, so that the relation of debtor and creditor did not exist, and still agree to return to the debtor any sum he might receive on the sale above the amount of the debt discharged, such a transaction, if fair and free from suspicion, might be sustained as a legal trust.

It is further argued, with great ability and zeal, by the counsel for the respondent, that, admitting that the relation of mortgagor and mortgagee existed between Jones and Shove at the date of the deed to the plaintiff, the plaintiff is a *bona fide* purchaser without notice of the title or interest of Jones, and therefore is entitled to recover in this action.

This argument is based mainly upon the provisions of sec. 32, ch. 86, R. S. 1858. And it is insisted that the evidence does not tend to show that the plaintiff had " actual notice," within the meaning of said section, of the rights of Jones as mortgagor, at the time of his purchase.

It is sought to give force to this argument by the claim that this provision of our statute was taken *verbatim* from the laws of Massachusetts, and that we are therefore to be controlled in its construction by the decisions of the highest court of that state, made before our adoption of the law here. It is true that the section above quoted is found as an existing law in the statute of Massachusetts at the time of its enactment here. It is also true that the same provision is found in the R. S. of Michigan of 1846; and from an examination of our ch. 59, R. S. 1849, and ch. 65, R. S. of Michigan of 1846, it will be found that our law is in most of its provisions a more exact copy of the law of Michigan than it is of that of Massachusetts. Our law declaring the effect of the want of registry of a deed as to subsequent purchasers is entirely different

from the law of Massachusetts, and is exactly the same as the law of Michigan, and so in many other particulars. We may, therefore, come to the conclusion that, so far as our registry law is adopted from the law of any other state, it was adopted from Michigan directly, and not from Massachusetts. The decisions of the supreme court of Massachusetts construing this law are not, therefore, entitled to more weight than those of any other court of equal learning and ability, which may have construed the same or like provisions of statute law.

That the purchaser had notice of the mortgagor's rights in this action must be found, if found at all, upon proof of the following facts: "That the mortgagor remained in the actual and exclusive possession of the lands in controversy from the date of the deed, August 27, 1870, down to the date of the plaintiff's deed, 1876; that the plaintiff knew of this possession at the time he took his deed; that he knew the land was called the Jones farm; that, only a few weeks before he took his deed from Shove, he went to the son of Jones, the defendant in this action, and offered to buy the south twenty acres, and to pay $3,000 for it; that he had spoken with Benjamin Jones about buying it; that he had always known it as the Jones farm, but did not know who was the owner of it, whether it was Benjamin Jones, *Alonzo D. Jones*, or Mr. Shove; that when he made the offer to buy the twenty acres, he thought the property belonged to Mr. Jones, and that he did not know that it belonged to Shove; that when he was spoken to by Shove to buy the land, he went to the register's office to have the title examined, and the register told him it was all right, that Mr. Shove would give him a warranty deed, and that Shove owned the land; that he knew nothing about the contracts between Shove and Jones; that he believed Shove's word and Franz's [the register's] word." The defendant testified that when the plaintiff came to buy the twenty acres, " I told him I could not sell for that price, and plaintiff said he was talking with Shove, and I stated to him I had a claim to the

property, and until that was settled he had better let it alone or he would get himself in trouble." The evidence also shows that the defendant is the son of Benjamin Jones, and was looking after his business generally.

The learned counsel for the plaintiff insists that this evidence was insufficient to justify a jury in finding that the plaintiff had actual notice of the rights of Jones, within the meaning of the statute, and therefore the court was right in refusing to submit that question to the jury. We do not agree with the learned counsel, and are of opinion that the learned circuit judge erred in refusing to submit this question to the jury. The actual notice required by the statute is not synonymous with actual knowledge. None of the cases, not even those cited from Massachusetts, hold that, in order to charge the purchaser with actual notice, it must be shown that he had actual knowledge of the precise claim of the person holding the unrecorded defeasance. We think the true rule is, that notice must be held to be actual when the subsequent purchaser has actual knowledge of such facts as would "put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase." Where the subsequent purchaser has knowledge of such facts, it becomes his duty to make inquiry, and he is guilty of bad faith if he neglects to do so, and consequently he will be charged with the actual notice he would have received if he had made the inquiry.

We are aware that this construction of the statute is in conflict with the later decisions of the supreme courts of Massachusetts and Indiana, and with the definition given to the term "actual notice" by Bouvier in his Law Dic., 236, and by Story in his Eq. Jur., § 399. *Parker v. Osgood*, 3 Allen, 487; *Dooley v. Wolcott*, 4 id., 406; *Sibley v. Leffingwell*, 8 id., 584; *White v. Foster*, 102 Mass., 375; *Lamb v. Pierce*, 113 id., 72; *Crassen v. Swoveland*, 22 Ind., 428–434. In 113

Brinkman vs. Jones.

Mass., 72, the court go so far as to say that, although the party taking the second conveyance had knowledge that the lands had been sold and purchased by another person before he purchased, yet, as it was not proved that he had knowledge that a deed had been given upon such first sale and purchase, he was not chargeable with actual notice. These cases all proceed upon the theory that actual notice and actual knowledge mean the same thing. We prefer to give a construction to this particular section of our statute, which will bring it, as far as possible, in harmony with all other statutes of the state made for the protection of purchasers of real estate. As all other statutes relating to registry were intended to protect only those who purchase in good faith, and not those who purchase in fraud of the party holding the real title, there is a presumption that the adoption of this particular section was not intended to make an exception to this just rule.

We can see no good reason why a person who has taken a defeasance in writing which makes an absolute deed a mortgage, should stand in a worse position than the man who makes an absolute deed, which, by a purely parol agreement, is proved to be a mortgage; yet in such case, as the section referred to does not and cannot apply, the right of the party claiming the estate against an absolute deed by a defeasance of a less degree of dignity in the law, would be protected against a subsequent grantee, upon proof of notice of his rights; and in that case, there being no statute on the subject, proof of knowledge of such facts as would put a prudent man upon inquiry, and render it fraudulent for him to purchase without making inquiry, would be sufficient. Nor do we see why a purchaser from a person holding an estate in trust, in fact, but which is not disclosed by the record, should be less protected in his purchase than the man who purchases as the plaintiff purchased in this case; and yet the statute in that case provides that if he purchase with " notice "— not " actual notice,"— he shall not be protected. Sec. 20, ch. 84, R. S. 1858.

We recognize the obligation to give some effect to the term "actual notice," as distinguished from mere "notice," and must therefore hold that no constructive knowledge shall be imputed to the purchaser as a ground of notice. For example, this court has held that actual, open and visible occupation, whether known to the purchaser or not, shall be deemed sufficient notice to the purchaser of the rights and equities of such occupant. This rule could not be applied to a case like the one at bar, unless such actual occupation was known to the purchaser.

The construction we are inclined to give to this statute, is abundantly sustained by authority. The supreme courts of Iowa, Missouri, Oregon and Maine, in which the law as to notice is the same as in Massachusetts, hold to the rule adopted by us in this case, and do not follow the strict construction given to the law in Massachusetts. *Musgrove v. Bonser*, 5 Oregon, 313; *Wilson v. Miller & Beeson*, 16 Iowa, 111. In this case, the court say: "We are thoroughly satisfied that Beeson either had actual and positive knowledge of the plaintiff's rights, or, what is the same thing in law, that he designedly abstained from making inquiries of Wilson for the purpose of avoiding knowledge." In *Maupin v. Emmons*, 47 Mo., 304–6, the court say: "The actual notice required by the statute is used in contradistinction to the constructive notice given by the record. It does not mean that there must necessarily be direct and positive evidence that the subsequent purchaser knew of the existence of the deed. Any proper evidence tending to show it, facts and circumstances coming to his knowledge that would put a man of ordinary circumspection upon inquiry, should go to the jury as evidence of such notice." In *Speck v. Riggin*, 40 Mo., 405, the court holds that, "notice is actual when the purchaser either knows of the existence of the adverse claim of title, or is conscious of having the means of knowledge, although he may not use them." In *Vaughn v. Tracy*, 22 Mo., 417, and 25 Mo., 318,

it is held that "evidence of possession and apparent owner-
ship brought home to the knowledge of the second pur-
chaser should go to the jury, and ought to be deemed suf-
ficient information that the possessor is the owner in fee."
The same rule is held in *Lemay v. Poupenez*, 35 Mo., 71;
*Roberts v. Moseley*, 64 id., 507; *Musick v. Barney*, 49 id.,
458. In *Porter v. Sevey*, 43 Me., 519, the court, in speak-
ing of what was proof of actual notice, and of the change
of the law so as to require "actual notice" of the unre-
corded conveyances, says: "The R. S., ch. 91, § 26, re-
quiring actual notice, was intended to control the construc-
tion which had been given by the courts, that the possession
of the grantee alone, if open, continued and exclusive, would
be sufficient foundation in law from which to infer notice to a
subsequent purchaser. It was not intended to change the
moral bearings of the question, or the rules of the common
law, by making a transaction honest which was before fraud-
ulent. It was to prevent a legal inference from inadequate
premises; to repudiate a course of inconclusive reasoning.
The subsequent purchaser might not know the fact, if it ex-
isted, that a prior purchaser was in possession; or, if he did,
that he claimed in fee. He might suppose that he was only a
tenant holding over; or a disseizor of his grantor, who had a
right of entry. If he was acting in good faith, he might well
suppose that his grantor would not undertake to sell to him
an estate which he did not own." Further along, the court
say, of this actual notice: "We are of the opinion that it may
be proved by circumstances, like any other fact, such circum-
stances as those before alluded to by PUTNAM, J.; and that
possession and improvement by the first purchaser is one cir-
cumstance, proper with others for the consideration of the
jury, though not alone sufficient." *Hull v. Noble*, 40 Me.,
480. In *Williamson v. Brown*, 15 N. Y., 359, Justice SEL-
DEN says: "Actual notice embraces all degrees and grades of
evidence, from the most direct and positive proof to the

slightest circumstance from which a jury would be warranted in inferring notice. It is a mere question of fact, and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion." ⌐

The following cases support the rule adopted by us, but they are not all under statutes which require actual notice: *Warren v. Sweet*, 31 N. Y., 332; *Price v. McDonald*, 1 Md., 403; *Hastings v. Cutler*, 24 N. H., 481; *Whitebread v. Jordan*, 1 Younge & Coll., 303; *Hankinson v. Barbour*, 29 Ill., 80; *Jordan v. Pollock*, 14 Ga., 157; *Lewis v. Bradford*, 10 Watts, 67; *Fisk v. Potter*, 2 Keyes, 70; *Sergeant v. Ingersoll*, 7 Pa. St., 340; 15 id., 343; *Parke v. Chadwick*, 8 W. & S., 96; *Blaisdell v. Stevens*, 16 Vt., 179; *Hubbard v. Smith*, 2 Mich., 207; *Morrison v. March*, 4 Minn., 422; *Groff v. Ramsey*, 19 id., 44; *Buck v. Holloway*, 2 J. J. Marsh, 163–180; *Daniels v. Davison*, 16 Ves., 249. The earlier decisions in Massachusetts did not take the ground that there must be actual knowledge of the existence of the unrecorded deed. *Curtis v. Mundy*, 3 Met., 405. In *New v. Farrell*, decided March 9, 1878, in supreme court of Minnnesota (N. W. Rep., vol. 2, p. 203), the court hold that possession of the grantor who had given an absolute deed to secure a debt, which was therefore a mortgage, was notice to a subsequent purchaser from the grantee named in such deed, of the equitable rights of such grantor, the proof showing that such subsequent purchaser had actual notice of such possession at the time of his purchase.

This court has repeatedly decided that possession of a party claiming under an unrecorded deed was sufficient notice of his equities to a subsequent purchaser, even though such occupation was unknown to the purchaser. *Wicke v. Lake*, 21 Wis., 410; *Ehle v. Brown*, 31 id., 405; *Warner v. Fountain*, 28 id., 405; *Wickes v. Lake*, 25 id., 71. Actual knowledge of the record of a deed which is not entitled to record because not properly witnessed, is sufficient notice to a subsequent pur-

chaser, of the equities of the grantee in such defective deed. *Gilbert v. Jess*, 31 Wis., 110. But none of the cases in this court called for the decision of the exact question involved in the case at bar; and they are cited for the purpose of showing that this court has uniformly held that the registry law is intended for the protection of those only who purchase in good faith, after making all reasonable examination as to the real condition of the title. The case of *Denton v. White*, 26 Wis., 679, was in some respects similar in its facts to the case at bar; but the question of what constituted an actual notice was not decided by the court.

It is insisted that the possession of Jones after the execution and recording of his deed, though known to the plaintiff, was no notice that he had or claimed any title to the land in hostility to his deed.

The authorities cited by counsel for the respondent would seem to countenance the proposition stated; but the statement made by the courts in the cases cited, that the possession of a grantor cannot be considered hostile to the rights of his grantee, are very broad and general, and are not supported by argument. We are of the opinion that the rule as stated in these cases must be qualified by at least two considerations: first, that such occupation is not inconsistent with the rights of the grantee; and second, that the length of time that the occupancy has continued ought to be considered. The first consideration is recognized by the authorities. *Butler v. Phelps*, 17 Wend., 642; *Cramer v. Benton*, 4 Lans., 291; *Chalfin v. Malone*, 9 B. Monroe, 496. And in the case of *Hoyt v. Jones*, 31 Wis., 389, Justice COLE, who delivered the opinion of the court on the first argument, not published, recognizes the fact that the grantor might hold adversely to the title of his grantee; and, although a reärgument was granted in the case, it was admitted by the counsel for the appellant that there was no doubt that the grantor might hold the posses-

sion adversely to his grantee. There would seem to be no good reason why the possession of a grantor may not be hostile to his deed, provided it be such as to give his grantee notice that he claims in hostility to his grant; nor why such hostile possession may not ripen into an adverse and perfect title, and bar the grantee from recovering the possession under the statute of limitations. The cases last above cited decide that a grantor may hold so adversely against his grantee. We have no doubt of the justice of the rule as stated by the counsel for the respondent, when the occupation has continued but a short time after the date of the deed, or when, though continued for a longer time, it is not inconsistent with the title purporting to be conveyed by the deed. We are, however, of the opinion that when the possession has been for a long period, the presumption of a claim of right hostile to the title granted does arise in every case where such possession is inconsistent with the rights of the grantee, and that in such case a court or jury might find the possession adverse from the nature of the possession, without proof of an express declaration on the part of the occupant that he claimed to hold in hostility to his grant. In the cases of *Van Keuren v. Central R. R. Co.*, 38 N. J. L., 165, and *Hennessy v. Andrews*, 6 Cush., 170, the possession of the grantor after his conveyance had continued but a short time before the rights of the contesting parties accrued, and in our view of the question there could have been no presumption that he was holding adversely to this grant, without express proof that he claimed to so hold; but we are inclined not to follow the decisions in those cases which hold that the possession, by the grantor, of the premises granted, for a long period of years after his grant, is no evidence that he claims in hostility thereto. We believe it to be more in harmony with the settled rules applicable to cases of adverse possession, to hold that whether he holds in subserviency to the grant or in hostility thereto depends upon the nature of the possession,

and is generally a question of fact, and not of law; and that the length of the possession is a circumstance to be considered in determining the nature of the possession.

The evidence in this case shows that the grantor and grantee lived in the same city, and within a very short distance of the lands in controversy; that the grantee was a banker, whose business is to loan money; that the grantor, Jones, had occupied the lands for many years previous to the giving of the deed in 1870, and continued to accupy the same in the same manner after the deed was given, down to and at the time the plaintiff purchased, more than six years after; that during all that time the farm continued to be known as the Jones farm, and no claim to the possession thereof had ever been made by the grantee in the Jones deed; that these facts were all known to the plaintiff before his purchase; and that, shortly before he bought of Shove, he applied to Jones to purchase the lands; and, for the purpose of this appeal, it must be held that he was then informed that Jones claimed to have an interest in the land. We are of the opinion that, with these facts in evidence, it was clearly a question for the jury, whether the plaintiff had notice that Jones claimed an interest in the lands hostile to the title of his grantor, Shove; and whether a man of ordinary prudence, with that knowledge, could afterwards, in good faith, purchase the lands of Shove, upon his mere declaration that he owned the land in fee, and the knowledge of the record of the deed in his favor. It was not sufficient to make inquiry of the person claiming in hostility to Jones, and to search the records. His inquiries should have been made of the person claiming in hostility to the recorded deed, and who held the possession. And, as this person lived in the same city with the plaintiff, it is some evidence of bad faith on his part that he made the purchase without such inquiry. *Shotwell v. Harrison*, 30 Mich., 179; Wade on the Law of Notice, § 270. We are of the opinion that the learned circuit judge should have submitted the case

to the jury upon the questions, whether the plaintiff had knowledge of such a state of facts as made it his duty to make inquiry as to the claim of Jones before purchasing, and whether, if he had prosecuted such inquiry with ordinary diligence, it would have led to actual notice of the claim which Jones made to the lands; and that he erred in taking these questions from the jury.

In the case of *New v. Farrell, supra,* the supreme court of Minnesota held that the possession of the grantor, though of but a very short continuance after his deed, was notice, to a person who had actual knowledge of such possession, that the grantor claimed in hostility to the deed, and that, as against such purchaser, the grantor might show that the deed was given as a mortgage. In that case, however, the defeasance was purely a parol one, and did not exist in writing; it was not, therefore, within the section which, in that state as well as in this, requires actual notice when there is a written defeasance which is not recorded. This case has gone further in charging notice upon a subsequent purchaser than this court would be willing to sanction in a case like the one at bar. We think, however, that when the first deed is to a person whose business is loaning money, and no change of possession takes place, and the grantor remains in as before, controlling the lands as his own without any interference on the part of the grantee for a series of years, these facts are strongly suggestive that the deed is given to secure a loan of money, rather than an absolute conveyance of the fee.

The fact that the evidence shows that it was *A. D. Jones,* the son of the grantor, who had the conversation about selling the land to the plaintiff, and that, in warning him not to buy of Shove, he said he had a claim on the land, and did not state that his father had any claim, and the fact that on the trial it appeared that at that time *A. D. Jones* had no interest in the land, do not destroy the effect of the evidence so as to justify the court in entirely disregarding the same. The evidence

showed that *A. D. Jones* was son of the grantor of Shove, and was looking after the affairs of his father; and it was for the jury to say whether, in speaking of his interest, he was not speaking of the interest of his father, and whether it was not so understood by the plaintiff at the time.

The objection that the defense was insufficiently pleaded is without force in this state. This court held in *Kent v. Agard*, *supra*, that when the proof in an action of ejectment shows that the plaintiff's title is in fact a mortgage, his suit must fail. The fact that his interest in the premises sought to be recorded is only a mortgage interest, is fatal to the action.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial awarded.